UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TURTLE ISLAND FOODS SPC** <br> **D/B/A TOFURKY COMPANY,** <br><br> **Plaintiff,** <br><br> v. <br><br> **MICHAEL G. STRAIN, in his official capacity as Commissioner of Agriculture and Forestry,** <br><br> **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is a civil-rights action challenging the constitutionality of Louisiana's 2019 Act No. 273, codified at Louisiana Rev. Stat. §§ 3:4741–4746 ("Act 273" or "the Act").

2. The Act imposes broad speech restrictions against food producers, prohibiting them from "[r]epresenting a food product as meat" if it is not derived from an animal carcass. It also prohibits food producers from using any language that "has been used or defined historically" in reference to certain state-favored "agricultural products," including meat products.

3. The Act would prohibit the Plaintiff, Tofurky, from marketing or selling any of its products in Louisiana, including for example "plant-based burgers," "plant-based ham style roast," and "plant-based jumbo hot dogs." If Tofurky continued to market or label its products in violation of the Act, the company would face civil penalties of $500 per violation per day. The Act is effective October 1, 2020.

–1–

4. The Act imposes sweeping restrictions on commercial speech. It prohibits companies from sharing truthful and non-misleading information about their products while doing nothing to protect the public from any conceivable harm.

5. By censoring familiar terms (like "veggie sausage") that any reasonable consumer understands, the Act only creates needless consumer confusion. And it does so with the clear purpose of suppressing free market competition for the benefit of specific state-defined competitors. In so doing, the Act violates the Free Speech Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment.

6. Plaintiff Tofurky seeks injunctive and declaratory relief under 42 U.S.C. § 1983 because the Act is unconstitutional on its face and as applied.

## JURISDICTION AND VENUE

7. This action arises under the Constitution of the United States and the provisions of 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a).

8. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims in this complaint occurred in Baton Rouge within this judicial district.

## PARTIES

10. Plaintiff Turtle Island Foods SPC, doing business as The Tofurky Company ("Tofurky"), is a social purpose corporation incorporated in the State of Washington and headquartered in Hood River, Oregon. Tofurky is a certified B corporation, which means the company is committed to the highest standards of social and environmental performance, public

transparency, and legal accountability. Tofurky has been family-owned and operated since 1980, and was founded under the principle that people, animals, and the environment matter more than profit margins.

11. Tofurky uses the trademarked name "Tofurky" for most of its 100% plant-based food products that it develops, produces, and markets. Tofurky products are sold nationwide, including throughout Louisiana. Tofurky products include plant-based chick'n, (including lightly seasoned, Thai basil, sesame garlic, and barbecue), plant-based deli slices (including smoked ham style, peppered, bologna style, hickory smoked, and oven roasted), a plant-based burger, plant-based artisan sausage (including spinach pesto, andouille, Italian, kielbasa, and beer brats), plant-based crumbles (including chorizo style and beef style), plant-based pockets (including ham and ched'ar, turk'y broccoli ched'ar, and pepp'roni pizza), tempeh (including smoky maple bacon, sesame garlic, organic five grain, and original soy cake), and plant-based roasts (including ham style and roast style).

12. Defendant Mike Strain is the Commissioner of Agriculture and Forestry for the State of Louisiana. He is charged with enforcement of the Act under La. Rev. Stat. § 3:4745.

## FACTS

### Plant-Based and Cultivated Meats

13. Plant-based meats are foods that are served and consumed in the same way as conventional meat but are made from plants. Plant-based meats are typically made from soy, wheat, jackfruit, pea protein, or other plant-based ingredients. A wide variety of plant-based meats is currently available in grocery stores, restaurants, and other retailers.

14. Consumers buy plant-based meats for a variety of reasons. Some choose plant-based meats out of concern for the environment or animal welfare; some choose plant-based meats

for health reasons; some avoid animal meats for religious reasons; and some simply wish to diversify their dining habits.

15. Consumers rely on food labels and marketing representations to help them easily identify plant-based alternatives to their favorite conventional meat products.

16. Cultivated meats are grown from animal cells. Cultivated meat producers add nutrients like salts and sugars to cultured animal cells, which grow into muscle, fat, and other tissues to form meat. The end product is real animal meat, which is indistinguishable from conventional meat from slaughtered animals, produced without the need to grow and slaughter live animals.

17. Because cultivated meat is made of real animal proteins and is indistinguishable from conventional meat at a cellular level, consumers who have intolerance or allergies to conventional meat will have the same reaction to cultivated meat from the same species.

18. The technique for growing cultivated meat is well understood, but startup businesses are still resolving technical and engineering challenges in scaling up production. This emerging technology has attracted major corporate investors such as Tyson and Cargill, as well as individual investors such as Bill Gates and Richard Branson.

19. Cultivated meat is not yet sold in supermarkets or restaurants.

**Consumers Are Not Confused About Plant-Based Meats**

20. There is no evidence that consumers are confused about the ingredients or sources of plant-based meats and other alternative products.

21. Tofurky's labels and marketing materials clearly state that the products are plant-based, meatless, vegetarian, and vegan. These labels are entirely truthful and do not violate any of

–4–

the labeling requirements set forth in the federal Food, Drug and Cosmetic Act (FDCA) at 21 U.S.C. § 343.

22. Tofurky and other purveyors of plant-based meats do not mislead consumers. To the contrary, their marketing emphasizes—through qualifiers like "plant-based" and "vegan" or the use of commonly understood terms like "veggie burger"—that their products are plant-based alternatives to meat from slaughtered animals.

23. In addition to prominently indicating that the products are plant-based, Tofurky's labeling accurately lists the products' ingredients.

24. Consumers are not likely to be confused by the appropriate use of words such as "meat," "burger," or "sausage" in context on vegetarian and vegan product labels. A consumer who is looking for food that has the flavor, texture, and appearance of bacon but that was not derived from a pig would find the label "veggie bacon" far more useful than a vague label such as "plant-based protein."

### Existing Law Already Forbids Misleading or Deceptive Labeling

25. Federal and state laws have long prohibited any misrepresentation in the marketing and labeling of food products.

26. Plant-based meat labels are regulated by the U.S. Food and Drug Administration under the FDCA.

27. A food is "misbranded" under the FDCA if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

28. On information and belief, the FDA has never brought any enforcement action for the misleading use of "meat" or related terms to describe plant-based meats based on their food labels or marketing materials.

29. When cultivated meat becomes available to consumers, the labels for cultivated meat from most the widely consumed species (e.g., cattle, sheep, and chickens) will be regulated by the U.S. Department of Agriculture under the Federal Meat Inspection Act ("FMIA") and the Poultry Products Inspection Act ("PPIA"). 21 U.S.C. §§ 457 and 607.[1]

30. The FMIA and PPIA categorize meat and meat food products and poultry products as "misbranded" if their "labeling is false or misleading in any particular." 21 U.S.C. §§ 453(h)(1) and 601(n)(1).

31. In addition, the Federal Trade Commission ("FTC") enforces the Federal Trade Commission Act ("FTCA"). *See* 15 U.S.C. § 45 (prohibiting "unfair or deceptive acts or practices" in or affecting commerce).

32. The FTCA's prohibition on "unfair or deceptive acts or practices" encompasses food marketing. The FTC regulates the marketing and advertising of food products to prevent consumer confusion and to ensure that products are accurately marketed.

33. In other words, the FTC already has authority to ensure that plant-based and cultivated meat products are marketed honestly and that consumers are adequately informed.

34. On information and belief, the FTC has never brought any enforcement action for the misleading use of "meat" or related terms to describe plant-based meats based on their advertising or marketing materials.

---

[1] *See* Formal Agreement Between the U.S. Dep't of Health & Human Servs. Food and Drug Admin. and U.S. Dep't of Agric. Off. of Food Safety 3, Mar. 7, 2019, https://bit.ly/2EVzaEZ (affirming that the USDA will ensure the "accurate labeling of human food products derived from the cultured cells of livestock and poultry subject to the FMIA and PPIA").

35. Likewise, Louisiana's State Food, Drug, and Cosmetic Law (La. Rev. Stat. § 40:601 *et seq.*) prohibits "misbranded food" including any "labeling" that is "false or misleading in any particular." La. Rev. Stat. § 40:608(1).

36. Further, Louisiana also prohibits any manner of "advertisement" which "contains any assertion, representation, or statement of fact which is untrue, deceptive, or misleading." La. Rev. Stat. § 51:411.

37. On information and belief, there have been no cases in Louisiana or any other state in the country holding that it is false or misleading to use the word "meat" or related terms on the labeling or marketing of plant-based meats.

## Act 273

38. One June 11, 2019, Governor John Bel Edwards signed 2019 Senate Bill 152 into law, creating Act 273 [La. Rev. Stat § 3:4741 *et seq.*].

39. The Act's stated purpose is "to protect consumers from misleading and false labeling of food products that are edible by humans." La. Rev. Stat. § 3:4742.

40. The Act contains no evidence or legislative findings that consumers are misled or confused by the use of "meat" or related terms on labels for plant-based meat. Nor does the Act contain any evidence or legislative findings that consumers are likely to be misled or confused about the use of such terms on labels for cultivated meat, or any current conventions surrounding the marketing or packaging of plant-based meat products.

41. Instead, when testifying in support of the law, the Defendant claimed that the purpose of the law was to "protect our industries" in the face of "a growing trend[.]"[2]

---

[2] May 30, 2019 Hearing in the Louisiana House Committee on Agriculture, Forestry, Aquaculture, and Rural Development.

42. Testifying about the "rice" portion of the law, the rice industry's representative admitted that "the Louisiana consumer" can "understand that these products are not rice. We know it's not rice." The industry instead objected to the "dishonest robbery of market share" by plant-based rice alternatives like riced cauliflower.[3]

43. Multiple state legislators also affirmed the protectionist intent behind the law, admitting that "everybody in here is wanting to protect the interest of our rice farmers and our beef farmers and so on"[4] and "[e]veryone wants to protect the industries in Louisiana."[5] Or, in the words of the bill's Senate sponsor: "We must protect our industry in this state. Agriculture. It's the number one industry in the state of Louisiana."[6]

44. The Act becomes effective on October 1, 2020.

45. The Act makes it illegal for any person to:

> intentionally misbrand or misrepresent any food product as an agricultural product through any activity including…
>     (2) Selling a food product under the name of an agricultural product.
>     …
>     (4) Representing a food product as meat or a meat product when the food product is not derived from a harvested beef, pork, poultry, alligator, farm-raised deer, turtle, domestic rabbit, crawfish, or shrimp carcass.
>     (5) Representing a food product as rice when the food product is not rice.
>     (6) Representing a food product as beef or a beef product when the food product is not derived from a domesticated bovine.
>     (7) Representing a food product as pork or a pork product when the food product is not derived from a domesticated swine.
>     (8) Representing a food product as poultry when the food product is not derived from domesticated birds.
>     (9) Utilizing a term that is the same as or deceptively similar to a term that has been used or defined historically in reference to a specific agricultural product.

---

[3] April 16, 2019 Hearing in the Louisiana Senate Committee on Agriculture, Forestry, Aquaculture, and Rural Development Committee (testimony of Scott Franklin).
[4] May 30, 2019 House Committee Hearing. (comments of Representative Clay Schexnayder).
[5] *Id.* (comments of then-Senator Francis Thompson).
[6] *Id.*

      (10) Affixing a label that uses the term "rice" in the name of the food product when the food product is not rice or derived from rice.
      (11) Representing a cell cultured food product as a meat product.
      (12) Representing a food product as sugar when it is not an unaltered plant-based simple sugar or sucrose.

La. Rev. Stat. § 3:4744(B).

46. The Act defines "agricultural product" as "any beef, pork, poultry, crawfish, shrimp, meat, sugar, or rice product that is edible by humans." La. Rev. Stat. § 3:4743(1).

47. The Act defines "meat" as "a portion of a beef, pork, poultry, alligator, farm-raised deer, turtle, domestic rabbit, crawfish, or shrimp carcass that is edible by humans but does not include a [s]ynthetic product derived from a plant, insect, or other source[,]" or a "[c]ell cultured food product grown in a laboratory from animal cells." La. Rev. Stat. § 3:4743(10).

48. The Act defines "meat product" as "a type of agricultural product that is edible by humans and made wholly or in part from meat or another portion of a beef, pork, poultry, alligator, farm-raised deer, turtle, domestic rabbit, crawfish, or shrimp carcass." La. Rev. Stat. § 3:4743(11).

49. The Act defines "beef product" as "a type of agricultural product that is edible by humans and produced in whole or in part from beef, including beef jerky, beef patties, chopped beef, fabricated steak, hamburger, ground beef, ribs, and roast." La. Rev. Stat. § 3:4743(3).

50. The Act defines "pork product" as "a type of agricultural product that is edible by humans and produced in whole or in part from pork, including bacon, bratwurst, ground pork, ham, pork chops, ribs, roast, and sausage." La. Rev. Stat. § 3:4743(16).

51. The Act defines "poultry" as "domesticated birds that are edible by humans." La. Rev. Stat. § 3:4743(17).

52. The Act imposes a civil penalty of "not more than five hundred dollars for each violation[,]" and provides that each "day on which a violation occurs shall be a separate offense."

La. Rev. Stat. § 3:4746(A). The Act further provides that "[i]n addition to civil penalties, the [Defendant] may assess the proportionate costs of the adjudicatory hearing against the offender." La. Rev. Stat. § 3:4746(C).

53. The Act gives the Defendant, in his official capacity as Commissioner of Agriculture and Forestry, sole enforcement authority under the Act, including the authority to "[s]eek and obtain injunctive or other civil relief to restrain and prevent violations" under the law, and to "[i]nstitute civil proceedings to enforce his rulings or collect any penalties due under" the law. La. Rev. Stat. §§ 3:4745(B)(2)–(4) & 4746(D)–(E).

**Effect of the Act on Tofurky**

54. The Act is specifically designed to disadvantage producers and sellers of plant-based and cultivated meats, including Tofurky, by restricting how they market, package, and sell their products. The Act forbids marketing products as meat alternatives or using meat terminology in truthful and non-misleading ways.

55. Tofurky cannot accurately and effectively describe its products without comparison to the conventional meat products whose flavor and texture profiles they are designed to evoke.

56. For the past 40 years, Tofurky has invested significant time and expense in developing delicious plant-based meat products and has benefitted from significant consumer recognition of its products and brand. Tofurky makes every effort to label and market its products in truthful and non-deceptive ways.

57. Tofurky's products are marketed and sold in Louisiana and nationwide.

58. Labels for all Tofurky products include modifiers like "veggie," "vegan," and "plant-based" that clearly indicate that the products do not contain meat from any of the "animal

carcasses" specified by the Act. To illustrate, some of Tofurky's current packaging appears as follows:








59. Tofurky's plant-based meat products, including those specifically referenced in this complaint, are sold throughout Louisiana at many retailers, including Whole Foods, Sprouts Farmers Market, Rouses Market, Albertsons, Target, and Winn-Dixie.

60. Because Tofurky's packaging and marketing materials feature specified or historically-used terms for "agricultural products," "meat products," "beef products," and "pork

products" under the Act—including, e.g., "kielbasa," "sausage," "hot dogs," "brat," "bologna," "ham," "roast," and "burger"—Tofurky reasonably fears enforcement under the Act.

61. The Act outlaws Tofurky's truthful and non-misleading speech. Because Tofurky markets and packages products in a way that Defendant could construe as violating the Act, the Act exposes Tofurky to the substantial risk of ruinous civil penalties and injunctions against its products.

62. The Act significantly hinders Tofurky's nationwide packaging and marketing of its products.

63. To comply with the Act, Tofurky must now: (1) choose to continue to have its products sold in the State of Louisiana as packaged, at substantial risk of ruinous civil liability; (2) design, produce, and distribute different, specialized marketing and packaging for its products destined for Louisiana, creating a logistical nightmare in distribution channels that service neighboring states or with online retailers that reach Louisiana consumers; (3) change the entirety of its marketing and packaging nationwide to comply with the Act, at considerable expense; or (4) refrain from marketing or selling its products in Louisiana at all, including in non-Louisiana media markets and online advertisements that may reach Louisiana consumers.

64. Each of these options puts Tofurky at a significant commercial disadvantage.

65. Retail chains that operate in Louisiana as well as other states may be less likely to carry plant-based meat products, including Tofurky's, if they cannot do so in the same manner and using the same distribution channels in all of their stores.

66. Compliance with the Act may damage the goodwill and brand recognition Tofurky has worked hard to build with consumers and may also create bad will for Tofurky. Similarly,

customers may be confused or frustrated by the counterintuitive and vague labeling that would be necessary to comply with the Act.

67. Tofurky may also be liable under the Act for its media advertising in other states that reaches Louisiana markets, including regional and national advertising that reaches Louisiana through print, television, radio, and the internet.

68. In all these ways, the Act significantly hinders Tofurky's exercise of commercial free speech in its nationwide packaging and marketing of its products.

### COUNT I

### Violation of Civil Rights – 42 U.S.C. § 1983
### First Amendment

69. Paragraphs 1–68 are incorporated by reference as if set forth fully herein.

70. In the following paragraphs, references to the First Amendment include the First Amendment as applied to the states by the Fourteenth Amendment.

71. The First Amendment protects the right to engage in truthful and non-misleading commercial speech concerning lawful activity.

72. The United States Supreme Court, in *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York,* 447 U.S. 557, has set forth the standard by which misleading speech can be regulated. If the speech is not misleading, "the government's power is more circumscribed."

73. Tofurky's speech is not misleading, in fact or as applied, because Tofurky's goods are well-labeled as vegetarian or vegan.

74. A reasonable consumer would recognize the speech is not misleading, and the state had no evidence that any Louisiana consumers were misled in the first place before passing the Act.

75. However, even assuming that the speech is potentially misleading, the Act does not meet the *Central Hudson* test, because the government's interest in restricting the speech is not substantial, and the law does not directly advance that interest and is not narrowly tailored to serve that interest.

76. The Act further does not meet the requirements of the *Central Hudson* test, because its stated purpose is protectionist favoritism of specific state industries.

77. Both on its face and as applied to Tofurky, Act 273 violates the First Amendment.

78. The Act unconstitutionally prohibits any individual or entity doing business in Louisiana, including Tofurky, from making truthful and non-misleading statements about the identity, quality, and characteristics of plant-based and cultivated meat products.

79. Specifically, the Act prohibits businesses from truthfully packaging and marketing plant-based meat products in a manner that effectively describes them as replacements for conventional meat products.

80. The Act's restrictions on speech do not directly and materially advance any substantial government interest.

81. The Act's restrictions on speech are not appropriately tailored to any substantial government interest.

### COUNT II
### Violation of Civil Rights - 42 U.S.C. § 1983
### Fourteenth Amendment Due Process Clause

82. Paragraphs 1–68 are incorporated by reference as if set forth fully herein.

83. The Fourteenth Amendment's Due Process Clause prohibits statutes that are unconstitutionally vague.

84. Because First Amendment freedoms need breathing space to survive, laws regulating speech are subject to a more stringent vagueness inquiry than laws regulating conduct.

85. Both on its face and as applied to Tofurky, Act 273 is unconstitutionally vague.

86. For example, it is unclear whether the Act prohibits Tofurky from packaging and marketing plant-based "deli slices" or plant-based "chick'n." See La. Rev. Stat.§ 3:44744(B)(9) (prohibiting the use of "a term that is the same as or deceptively similar to a term that has been used or defined historically in reference to a specific agricultural product").

87. Act 273 fails to provide persons of ordinary intelligence a reasonable opportunity to understand when or how their packaging or marketing materials violate the Act.

88. The vagueness inherent in the Act's terms authorizes or encourages arbitrary and discriminatory enforcement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare the Act unconstitutional, both on its face and as applied to Tofurky;

B. Upon motion, grant preliminary injunctive relief preventing the enforcement of the Act, both on its face and as applied to Tofurky;

C. Grant a permanent injunction preventing the enforcement of the Act, both on its face and as applied to Tofurky;

D. Award costs and attorneys' fees under 42 U.S.C. § 1988; and

E. Grant any other relief that the Court deems just and proper.

Dated: October 7, 2020                    Respectfully submitted,

**JONES WALKER LLP**

**/s/ Tarak Anada**
Tarak Anada (La. Bar No. 31598)
201 St. Charles Ave., Ste. 4900
New Orleans, LA 70170
Telephone: 504-582-8322
Fax: 504-589-8322
Email: tanada@joneswalker.com


**STERNBERG, NACCARI & WHITE, LLC**

**/s/ Scott L. Sternberg**
**SCOTT L. STERNBERG**, La. Bar No. 33390
**GRAHAM H. WILLIAMS,** La. Bar No. 36731
935 Gravier Street, Suite 2020
New Orleans, Louisiana 70112
Tel: 504.324.2141| Fax: 504.534.8961
scott@snw.law | graham@snw.law

**THE GOOD FOOD INSTITUTE**

Jessica Almy*
Nigel Barrella*
1120 Connecticut Ave. NW, Suite 1080
Washington, DC 20036
Email: nigelb@gfi.org
Phone: (202) 768-7510

**ANIMAL LEGAL DEFENSE FUND**

Amanda M. Howell*
Caitlin Foley*
525 E. Cotati Ave.
Cotati, CA 94931
Email: ahowell@aldf.org
Phone: (707) 795-2533


\* *pro hac vice* motions forthcoming

***Attorneys for Plaintiff***