UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


TURTLE ISLAND FOODS SPC                          CIVIL ACTION

VERSUS

MICHAEL G. STRAIN,                               NO. 20-00674-BAJ-EWD
*in his official capacity as Commissioner
of Agriculture and Forestry*

## RULING AND ORDER

Before the Court are the parties' **Cross-Motions for Summary Judgment (Doc. 36; Doc. 37)**. The Motions are opposed. (Doc. 39; Doc. 45). Plaintiff filed a Reply Brief. (Doc. 46). Following a hearing on the matter, the parties filed supplemental briefing. (Doc. 51; Doc. 52). For the reasons stated herein, Plaintiff's Motion is **GRANTED** and Defendant's Motion is **DENIED.**

## I. BACKGROUND

### A. Facts

This case concerns Louisiana's 2019 Act No. 273, entitled the "Truth in Labeling of Food Products Act," Louisiana Rev. Stat. §§ 3:4741-4746. (Doc. 37-1, ¶ 1; Doc. 45-1; Doc. 36-2, ¶ 1; Doc. 39-1, ¶ 1). The Act was signed into law on June 11, 2019, with an effective date of October 1, 2020. (Doc. 37-1, ¶ 1; Doc. 45-1). The Act provides:

> B. No person shall intentionally misbrand or misrepresent any food product as an agricultural product through any activity including:
>
> (1)    Affixing a label to a food product that is false or misleading.

1

(2)     Selling a food product under the name of an agricultural product.

(3)     Representing a food product as an agricultural product for which a definition and standard of identity has been provided by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, unless:

   (a) The food product conforms to the definition and standard.

   (b) The label of the food product bears the name of the food specified in the definition and standard and includes the common names of optional ingredients other than spices, flavoring, and coloring present in the food as regulations require.

(4)     Representing a food product as meat or a meat product when the food product is not derived from a harvested beef, port, poultry, alligator, farm-raised deer, turtle, domestic rabbit, crawfish, or shrimp carcass.

(5)     Representing a food product as rice when the food product is not rice.

(6)     Representing a food product as beef or a beef product when the food product is not derived from a domesticated bovine.

(7)     Representing a food product as pork or a pork product when the food product is not derived from a domesticated swine.

(8)     Representing a food product as poultry when the food product is not derived from domesticated birds.

(9)     Utilizing a term that is the same as or deceptively similar to a term that has been used or defined historically in reference to a specific agricultural product.

(10)    Affixing a label that uses the term "rice" in the name of the food product when the food product is not rice or derived from rice.

(11)    Representing a cell cultured food product as a meat product.

(12)    Representing a food product as sugar when it is not an unaltered plant-based simple sugar or sucrose.

La. Rev. Stat. § 3:4744(B).

Plaintiff produces and packages plant-based meat products that are marketed and sold in Louisiana and nationwide. (Doc. 37-1, ¶ 5; Doc. 45-1). Plaintiff's labels and marketing materials clearly state that its products are plant-based, meatless, vegetarian, or vegan, and accurately list the product's ingredients. (Doc. 37-1, ¶¶ 6–7; Doc. 45-1).

In response to the Act, Plaintiff has refrained from using certain words and images on marketing materials and packages and has removed videos from its website and social media. (Doc. 37-1, ¶ 11; Doc. 45-1). It would be "incredibly expensive" for Plaintiff to create specialized labels for products sold in Louisiana or to change its labeling and marketing nationwide. (Doc. 37-1, ¶ 12; Doc. 45-1).

The Louisiana Legislature designated the Department of Agriculture and Forestry (LDAF) Commissioner to administer and enforce the provisions of the Act. (Doc. 36-2, ¶ 2; Doc. 39-1, ¶ 2). The Commissioner and his staff have formulated rules and regulations to enforce the provisions of this law. (Doc. 36-2, ¶ 3; Doc. 39-1, ¶ 3). To date, the Commissioner has not sought to enforce the provisions of the Act. (Doc. 36-2, ¶ 4; Doc. 39-1, ¶ 4).

No federal agency has brought any enforcement action against Plaintiff for the misleading use of "meat" or related terms to describe plant-based meats based on its food labels or marketing materials. (Doc. 37-1, ¶ 10; Doc. 45-1). The LDAF has not received any complaints from consumers about Plaintiff's labels. (Doc. 37-1, ¶ 8; Doc. 45-1). The LDAF has also not received any complaints from consumers about

labels for plant-based meat products or cell cultured food products, and the State of Louisiana has not investigated any such labels. (Doc. 37-1, ¶ 9; Doc. 45-1).

Defendant has reviewed Plaintiff's labels and determined that they do not violate the Act. (Doc. 36-2, ¶ 5; Doc. 39-1, ¶ 5). Defendant asserts that Plaintiff has not been cited for violating the Act or threatened with enforcement. (Doc. 36-2, ¶ 6). Plaintiff disputes that it has not been threatened with enforcement because it avers that the statute itself is a threat. (Doc. 39-1, ¶ 6).

### B. Procedural History

On October 7, 2020, Plaintiff filed suit against Defendant, asserting jurisdiction under 28 U.S.C. §§ 1331 and 1343(a). (Doc. 1, ¶ 7). The parties then filed cross-Motions for Summary Judgment. (Doc. 36; Doc. 37).

## II.    LEGAL STANDARD

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of Defendant's Motion, and therefore, the Court could grant Defendant's Motion for Summary Judgment on this basis alone.").

## III. DISCUSSION

### A. Standing

Before the Court may proceed to the merits of this case, the Court must determine whether Plaintiff has standing to challenge the Act. Defendant argues that Plaintiff does not have standing because Plaintiff's labels are neither misleading nor proscribed by the Act. (Doc. 45, p. 3). Accordingly, Defendant contends that Plaintiff does not have an "actual injury" that is redressable by the Court. (*Id.*). Because there

is no concrete dispute between the parties, Defendant asserts that the Court does not have jurisdiction. (*Id.*).

Plaintiff responds that it has standing for three main reasons: (1) the plain language of the Act applies to Plaintiff's speech; (2) Plaintiff has a reasonable fear of enforcement; and (3) Plaintiff's intended commercial speech has been chilled by the Act. (Doc. 39, p. 3–5).

### i.    Legal Standard

To establish standing, a plaintiff must demonstrate (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) is fairly traceable to the defendant's actions; and (3) is likely to be redressed by a favorable decision. *Barilla v. City of Hous., Tex.*, 13 F.4th 427, 431 (5th Cir. 2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

In pre-enforcement cases alleging a violation of the First Amendment's Free Speech Clause, the Supreme Court has recognized that chilled speech or self-censorship is an injury sufficient to confer standing. *Barilla*, 13 F.4th at 431 (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486–87 (1965); *Va. v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988); *accord Ctr. For Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006); *Hous. Chron. Publ'g Co. v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007)). A plaintiff bringing such a challenge need not have experienced "an actual arrest, prosecution, or other enforcement action" to establish standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Instead, such a plaintiff may demonstrate an

injury-in-fact by showing that it: (1) has an 'intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) its intended future conduct is arguably proscribed by the policy at issue; and (3) the threat of future enforcement of the challenged policy is substantial. *Barilla*, 13 F.4th at 432–34. (citing *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (alterations in original) (quoting *Susan B. Anthony List*, 573 U.S. at 161–64; citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The Court will analyze each of the three prongs in turn.

### ii.   Discussion

#### a. Whether Plaintiff Intends To Engage In A Course Of Conduct Arguably 'Affected With A Constitutional Interest'

First, Plaintiff asserts that its conduct constitutes protected commercial speech and is therefore 'affected with a constitutional interest.' (Doc. 52, p. 3). Defendant does not appear to dispute that this case involves a constitutional interest. Accordingly, the Court finds that Plaintiff's intended conduct is arguably affected with a constitutional interest.

#### b. Whether Intended Future Conduct Is Arguably Proscribed By The Policy At Issue

Second, Plaintiff argues that "both its current and intended speech is proscribed by the Act because the Act prohibits representing plant-based products [] using terms the Act defines as applying only to products derived from slaughtered animals, without providing any safe harbor for labels that make clear that products are derived from plants." (Doc. 52, p. 3).

Defendant contends that Plaintiff's intended future conduct—labeling of its products—is not proscribed by the Act. (Doc. 36-1, p. 8). Indeed, the Commissioner has determined that nine of Plaintiff's labels for currently marketed products do not violate the Act.[1] (Doc. 36-1, p. 8; Doc. 39, p. 6).

The Court finds that Plaintiff has presented a basis to find that its future conduct is arguably proscribed by the Act. The Act specifically prohibits any person from "intentionally misbrand[ing] or misrepresent[ing] any food product as an agricultural product through any activity including:"

    (2)    Selling a food product under the name of an agricultural product.

    (3)    Representing a food product as an agricultural product for which a definition and standard of identity has been provided by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, unless:

        (a) The food product conforms to the definition and standard.

        (b) The label of the food product bears the name of the food specified in the definition and standard and includes the common names of optional ingredients other than spices, flavoring, and coloring present in the food as regulations require.

    (4)    Representing a food product as meat or a meat product when the food product is not derived from a harvested beef, port, poultry, alligator, farm-raised deer, turtle, domestic rabbit, crawfish, or shrimp carcass.

        . . .

    (6)    Representing a food product as beef or a beef product when the food product is not derived from a domesticated bovine.

---

[1] The labels that the Commissioner has determined do not violate the Act include nine of Plaintiff's labels submitted to the Court. These nine labels are merely illustrative and do not include all of Plaintiff's product labels. (Doc. 52, p. 4).

(7)    Representing a food product as pork or a pork product when the food product is not derived from a domesticated swine.

(8)    Representing a food product as poultry when the food product is not derived from domesticated birds.

(9)    Utilizing a term that is the same as or deceptively similar to a term that has been used or defined historically in reference to a specific agricultural product.

. . .

(11)    Representing a cell cultured food product as a meat product.

La. Rev. Stat. § 3:4744(B). The Act defines "meat" as:

"Meat" means a portion of a beef, pork, poultry, alligator, farm-raised deer, turtle, domestic rabbit, crawfish, or shrimp carcass that is edible by humans *but does not include a:*

(a) Synthetic product derived from a plant, insect, or other source.

(b) Cell cultured food product grown in a laboratory from animal cells.

La. Stat. Ann. § 3:4743(10).

Plaintiff's use of "meat" terms to define non-meat products is arguably proscribed conduct according to the plain language of the Act outlined above.

### c. Whether The Threat Of Future Enforcement Of The Challenged Policy Is Substantial

Accordingly, whether Plaintiff has standing turns on whether the threat of future enforcement of the Act is substantial. Plaintiff argues that the threat of future enforcement is substantial, relying on the Fifth Circuit's decision in *Barilla v. City of Houston, Texas.* 13 F.4th 427, 433 (5th Cir. 2021). Plaintiff argues that there, the Circuit held that courts must assume a credible threat of prosecution in the absence

of compelling contrary evidence. (Doc. 52, p. 4 (citing *Barilla*, 13 F.4th at 432)). Plaintiff also relies on the Fifth Circuit's decision in *Speech First, Inc. v. Fenves* to argue that declarations by enforcing officials showing a lack of intention to penalize plaintiff's intended conduct in a pre-enforcement First Amendment challenge do not qualify as "compelling contrary evidence" sufficient to overcome the presumption of a threat of future enforcement. 979 F.3d 319, 338 (5th Cir. 2020), *as revised* (Oct. 30, 2020). (Doc. 52, p. 5).

Contrarily, Defendant argues that the threat of future enforcement is not substantial, relying on the following evidence. First, the Commissioner submitted an Affidavit attesting that nine of Plaintiff's current labels do not violate the Act because they are neither misleading nor do they constitute a misbranding.[2] (Doc. 36-3, ¶ 5; Doc. 39, p. 6). Second, the Commissioner asserts that Plaintiff has never been cited for violating the Act. (Doc. 36-1, p. 8). Third, the Commissioner has agreed not to enforce the Act during the pendency of this lawsuit. (*Id.* at p. 6). Finally, the Commissioner asserts that Plaintiff faces no threat of enforcement as the LDAF will not retroactively determine that Plaintiff's nine labels violate the Act. (Doc. 51, p. 5).

Plaintiff responds that Defendant's assurances do not remove the threat of future enforcement because the labels that the Commissioner has determined do not

---

[2] Specifically, Defendant argues that "Commissioner Strain has formally established that [Plaintiff] will not face any threat of civil enforcement (there is no criminal penalty here) of the [Act] because [Plaintiff's] labels presented to the [C]ourt are not violative of that law." (Doc. 51, p. 5). In his Affidavit, the Commissioner attested that the LDAF reviewed the labels that Plaintiff presented to the Court and determined that they do not violate the Act. (Doc. 36-3, ¶ 5). The Commissioner attested that "LDAF does not find [the labels] misleading nor do they constitute a misbranding." (*Id.*).

violate the Act are merely illustrative, and do not include *all* of Plaintiff's product labels. (Doc. 52, p. 4). Indeed, although the Commissioner has found that the nine labels Plaintiff submitted to the Court do not violate of the Act, the Commissioner "makes no representations as to whether any other label of [Plaintiff] would be violative of the provisions of the Act." (Doc. 36-1, n.1).

Plaintiff argues that it has a "serious intent" to engage in proscribed conduct because it would have used certain marketing words and images but for the existence of the Act. (Doc. 52, p. 3; Doc. 37-1, ¶¶ 11–12; Doc. 45-1). In response to the Act, Plaintiff has *already* refrained from using certain words and images on marketing materials and packages and has removed videos from its website and social media. (Doc. 37-1, ¶ 11; Doc. 45-1). Additionally, Plaintiff has a "depth of marketing" that was not included in Plaintiff's illustrative list of labels provided to the Court that the State may determine runs afoul of the Act, "including years of online marketing." (Doc 52, p. 5). Defendant does not dispute that it would be "incredibly expensive" for Plaintiff to create specialized labels for products sold in Louisiana or to change its labeling and marketing nationwide. (Doc. 37-1, ¶ 12; Doc. 45-1).

The Court finds that the threat of future enforcement is substantial. "In pre-enforcement cases alleging a violation of the First Amendment's Free Speech Clause, the Supreme Court has recognized that chilled speech or self[-]censorship is an injury sufficient to confer standing." *Barilla v. City of Houston, Texas*. 13 F.4th 427, 431–32 (5th Cir. 2021). Here, Plaintiff has engaged in self-censorship as it has already changed its marketing practices in Louisiana in response to the Act. Additionally,

Plaintiff's speech has been chilled by the Act. The Commissioner's determination that nine of Plaintiff labels do not violate the Act does not persuade otherwise. The Court does not doubt that the Commissioner will uphold his qualified agreement that he will not seek enforcement of the Act regarding these labels. However, the Commissioner expressly acknowledged that he may find Plaintiff's other labels objectionable.[3] Accordingly, Plaintiff has no way of knowing whether its additional current or future labels might violate the Act.[4] Indeed, a new Commissioner may take a different approach in response to the Act and seek enforcement against Plaintiff for its vast array of labeling not included in its "illustrative" labels included in its Complaint. In making this finding, the Court finds the following opinion informative.

In *Speech First*, the Fifth Circuit found that the defendant-university's policies likely established a substantial threat of future enforcement against those in a class whose speech was arguably restricted.[5] 979 F.3d 319, 338 (5th Cir. 2020), *as revised* (Oct. 30, 2020). The Circuit emphasized that this likelihood is all that is necessary to

---

[3] Indeed, even if the Commissioner reviewed all of Plaintiff's current labels, the threat of future enforcement would still be substantial. The Commissioner's Affidavit specifically makes no representation regarding whether Plaintiff's additional current labels or future labels might violate the Act. Accordingly, Plaintiff may suffer a chilling effect in bringing new products to market, or in maintaining current products on the market that appear to run afoul of the Act.

[4] The Commissioner's qualified disavowal of any future intention to enforce the Act against Plaintiff appears arbitrary, as the plain language of the Act appears to proscribe Plaintiff's conduct. Moreover, the Commissioner's Affidavit to the Court does not have the binding effect of a regulation. Not only could the current Commissioner change his mind, but a new Commissioner could take a different course of action.

[5] The Court notes that this decision was made at the preliminary injunction phase, and the instant case is decided on summary judgment. Noting this distinction, the Court finds the case informative.

establish the final element of an injury-in-fact for standing.

There, the court considered the defendant's "contrary evidence" to the presumption of enforcement, including declarations establishing the defendant's lack of intention to penalize the intended conduct at issue and an absence of past enforcement of the policy. *Id.* at 336. The Fifth Circuit found that the declarations together with the absence of past enforcement was "not compelling" evidence. ("[T]his evidence is not compelling."). *Id.* The Circuit emphasized that the officials' disavowal of any future intention to enforce the policies at issue simply reinforced the open-ended language in those policies, stating:

> Even more to the point, if there is no history of inappropriate or unconstitutional past enforcement, and no intention to pursue discipline against students under these policies for speech that is protected by the First Amendment, then why maintain the policies at all? At least, why maintain the plethora of potential sanctions?

*Id.* at 337–38 ("Surely it reasonably implies that the University will protect and enforce its verbal harassment policy as far as possible, but the distance to that horizon is unknown by the University and unknowable to those regulated by it."). The court also expounded that "[p]ast enforcement of speech-related policies can assure standing, but [] a lack of past enforcement does not alone doom a claim of standing. *Id.* (citing *Carmouche*, 449 F.3d at 660 ("Controlling precedent . . . establishes that a chilling of speech because of the mere existence of an allegedly vague or overbroad [law] can be sufficient injury to support standing.")).

The Court finds this case to be similar. Because Plaintiff has demonstrated a "serious intent" to engage in proscribed conduct, Plaintiff's desired conduct is

arguably proscribed by the Act, and the threat of future enforcement is substantial,

Plaintiff has a justiciable injury. *Barilla v. City of Houston, Texas.* 13 F.4th 427,

432–35 (5th Cir. 2021). Plaintiff has standing to challenge the Act.[6]

### B. Whether the Act is an Unconstitutional Violation of Plaintiff's First Amendment Right to Free Expression

#### i. Legal Standard

Although the Constitution protects commercial speech, that protection is more

limited than for most other forms of speech. *Express Oil Change, L.L.C. v.*

---

[6]      The Court's finding is bolstered by the Eighth Circuit's holding in *Turtle Island Foods, SPC v. Thompson.* 992 F.3d 694, 697 (8th Cir. 2021). There, the Eighth Circuit found that Tofurky had standing to challenge a Missouri statute that criminalizes "misrepresenting a product as meat that is not derived from harvested production livestock or poultry." *Id.* The Eighth Circuit applied the same standard discussed here, noting that "[t]his is a forgiving standard, satisfied so long as [plaintiffs'] 'intended future conduct is arguably . . . proscribed by the statute it wishes to challenge.'" *Id.* at 699. The Eighth Circuit found that although it was not clear whether all of Tofurky's intended commercial speech would be proscribed by the Missouri statute, it was at least "arguable" at the early preliminary injunction stage of the litigation. *Id.* at 700. The court also emphasized that because plaintiffs' claim was "largely a legal question" and involves the chill of "allegedly protected First Amendment expression," it was ripe for adjudication. *Id.*

In *Turtle Island Foods SPC v. Soman,* the U.S. District Court for the Eastern District of Arkansas found that Tofurky had standing to challenge a similar statute in Arkansas. 424 F. Supp. 3d 552, 566 (E.D. Ark. 2019). There, the State argued that Tofurky did not have standing to challenge the Act because it was not faced with a credible threat of prosecution. The court found that "[t]he State's arguments misunderstand what Tofurky must show to demonstrate appropriate standing." *Id.* at 566. In a pre-enforcement suit, "a plaintiff satisfies the injury-in-fact requirement," and thus has standing, "where [it] alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* Finding that Tofurky had standing, the court emphasized that:

> [T]here is nothing stopping the State from simply changing its mind and deciding to prosecute Tofurky during the pendency of this litigation . . . Thus, the credible threat of incurring significant liability for continued actions in violation of [the] Act [] demonstrates sufficient injury and ripeness to grant Tofurky standing. . .

*Id.* at 567. The court made this finding at the preliminary injunction phase.

*Miss. Bd. Of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 487 (5th Cir. 2019) (citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978)). The test for when a government actor may regulate commercial speech was set forth in *Central Hudson*: "(1) whether the commercial speech at issue concerns unlawful activity or is misleading; (2) whether the governmental interest is substantial; (3) whether the challenged regulation directly advances the government's asserted interest; and (4) whether the regulation is no more extensive than necessary to further the government's interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). "Each of these latter three inquiries"—whether (1) 'the asserted governmental interest is substantial,' (2) the regulation 'directly advances' that interest, and (3) the regulation 'is not more extensive than is necessary to serve that interest'—must be answered in the affirmative for the regulation to be found constitutional." *Express Oil Change, L.L.C.*, 916 F.3d at 492 (citing *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002)).

"The party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Express Oil Change, L.L.C*, 916 F.3d at 487 (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983)). This "burden is a 'heavy' one," and may not be "satisfied 'by mere speculation or conjecture[.]'" *Id.*

### ii. Discussion

Applying the *Central Hudson* test, the Act impermissibly restricts commercial speech because the speech at issue is not misleading, and while the governmental

interest is likely substantial, the Act is more extensive than necessary to further the Government's interest. *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 566.

### a. Whether the Commercial Speech at Issue is Misleading

First, the Court must determine whether the commercial speech at issue is misleading. *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 566. Here, the parties agree that Plaintiff's speech is not misleading. Defendant attested in an Affidavit that the "LDAF does not find [Plaintiff's labels] misleading nor do they constitute a misbranding." (Doc. 45, p. 1–2). Accordingly, the first prong of the *Central Hudson* test is met.

### b. Whether the Governmental Interest is Substantial

Second, the Court must determine whether the asserted governmental interest is substantial. The purpose of the Act "is to protect consumers from misleading and false labeling of food products that are edible by humans." La. Rev. Stat. § 3:4742. Plaintiff agrees that the Government "undoubtedly has an interest in preventing consumer deception, the ostensible interest behind the Act." (Doc. 37-2, p. 17). Accordingly, the second prong of the *Central Hudson* test is met.

### c. Whether the Challenged Regulation Directly Advances the Government's Asserted Interest

Third, Plaintiff argues that the Act fails to directly advance the State's interest. (Doc. 37-2, p. 17). Plaintiff argues that the State cannot show that the Act advances its interest of preventing consumer confusion because there is no evidence that consumers are confused by plant-based or cell-cultured meat product labeling.

16

(*Id.*). In support of its argument, Plaintiff cites the lack of complaints, investigations, or documents reflecting consumer confusion.[7] (*Id.*). Plaintiff also cites the Declaration of Jareb Gleckel, attorney and author of an empirical study entitled *Are Consumers Really Confused by Plant-Based Food Labels? An Empirical Study*. (Doc. 37-4).[8] (*Id.*). Plaintiff argues that the State cannot point to any studies, evidence, or statistics concerning consumer confusion about plant-based or cell-cultured meat products. (Doc. 37-2, p. 17).

Defendant responds that the State has chosen to prohibit the intentional misrepresentation and misbranding of certain food products to directly advance its substantial interest of protecting consumers. (Doc. 36-1, p. 16).

Plaintiff presents compelling evidence indicating that consumers are not confused by its labeling. In response, Defendant *fails* to produce evidence indicating that consumers are confused by Plaintiff's labeling. Therefore, the Act's limitations on Plaintiff's commercial speech likely do not directly advance the State's interest of avoiding consumer confusion. Presumably, the Act may advance the State's interest in other ways, apart from the instant facts. Regardless of whether the Act directly advances the State's interest, the Court finds that the Act is more extensive than necessary to further the State's interest. Accordingly, the outcome is the same.

---

[7] The undisputed facts in this case indicate that the LDAF has not received any complaints from consumers about Plaintiff's labels or about labels for plant-based meat products or cell cultured food products. The State of Louisiana has not investigated any such labels. (Doc. 37-1, ¶ 8–9; *see generally* Doc. 45-1).

[8] Plaintiff submitted the article to the Court for its consideration, which was published in the Journal of Animal and Environmental Law, Vol. 12, No. 2 (Spring 2021).

### d. Whether the Regulation is No More Extensive than Necessary to Further the Government's Interest

Fourth, Plaintiff contends that the Act is more extensive than necessary to serve the State's interest. (Doc. 37-2, p. 18). Plaintiff contends that an alternative, less restrictive means, such as a disclaimer would be sufficient to protect the public. (*Id.*). For instance, Plaintiff contends that the State could "require more prominent disclosures of the vegan nature of plant-based products, create a symbol to go on the labeling and packaging of plant-based products indicating their vegan composition, or require a disclaimer that the products do not contain meat."[9] (*Id.* (citing *Turtle Island Foods SPC v. Soman*, 424 F. Supp. 3d 552, 576 (E.D. Ark. 2019)).

Defendant responds that the Act "is so narrowly tailored that it prohibits only misleading labels and misbranding." (Doc. 45, p. 4). Defendant contends that the prohibitory language in the Act is equally clear and direct: "No person shall intentionally misbrand or misrepresent any food product as any agricultural product through any activity . . ." followed by a specific and detailed description of proscribed conduct included. La. Rev. Stat. § 3:4744(B). Defendant contends that the Act

---

[9] In Mississippi, Upton's Naturals Co. and the Plant Based Foods Association challenged a similar law on First Amendment grounds. *Upton's Naturals Co., et al. v. Phil Bryant, et al.*, No. 3:19-CV-00462-HTW-LRA. Thereafter, the Mississippi Department of Agriculture and Commerce proposed new regulations that would allow the use of meat terms on the labels of plant-based food if certain conditions are met. Specifically, the proposed regulations specify that a plant-based food product will not be considered to be labeled as a "meat" or "meat food product" if one or more of the following terms, or a comparable qualifier, is prominently displayed on the front of the package: "meat free," "meatless," "plant-based," "veggie-based," "made from plants," "vegetarian," or "vegan." *See Mississippi Reverses Stance on Plant-Based Meat Labeling*, Nat'l L. Rev., https://www.natlawreview.com/article/mississippi-reverses-stance-plant-based-meat-labeling (last visited Mar. 17, 2022). Here, a similar regulation would be widely applicable, provide clear standards for all regulated persons, and prevent the arbitrary enforcement (or lack of enforcement) regarding a particular entity or label.

proscribes only intentional misleading or intentional misbranding, and accordingly, is not more extensive than necessary to serve the State's interest. (Doc. 36-1, p. 16).

The Fifth Circuit has recognized various "regulatory safeguards" which the state may impose in place of a total ban on commercial speech. *See Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 493 (5th Cir. 2019) ([defendant] fails to address why alternative, less-restrictive means, such as a disclaimer, would not accomplish its stated goal of protecting the public."); *see also Byrum v. Landreth*, 566 F.3d 442, 449 (5th Cir. 2009) ("[C]oncerning the terms "interior design" and "interior designer," [the Fifth Circuit] held that "the State could have eliminated any constitutional challenge here by not limiting use of the terms 'interior design' and 'interior designer' but by allowing only designers who satisfy its licensing qualifications to represent themselves as 'licensed' interior designers.").

Defendant has failed to address why alternative, less-restrictive means, such as a disclaimer, would not accomplish its goal of preventing consumer confusion. Defendant bears the burden of justifying the instant restriction on commercial speech. This "burden is a 'heavy' one," and may not be "satisfied 'by mere speculation or conjecture,'" *Express Oil Change, L.L.C*, 916 F.3d at 487 (citations omitted). Here, Defendant's general argument that the Act does not prohibit Plaintiff's commercial speech, but only prohibits *other* misleading speech is not enough to bear its burden. Defendant has "failed to satisfy the required burden of demonstrating a reasonable

fit between its regulation and the constitutionally-protected speech." *See id.* at 493.
Accordingly, the Act is an impermissible restriction on Plaintiff's commercial speech.

Because the Court has reached this conclusion, it need not address whether the Act is unconstitutionally vague.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Summary Judgment (Doc. 37)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Michael G. Strain's **Motion for Summary Judgment (Doc. 36)** is **DENIED.**

**IT IS FURTHER ORDERED** that Act No. 273 is unconstitutional. The Defendants are enjoined from enforcing the provisions of the Act.

**IT IS FURTHER ORDERED** that the Court will withhold final judgment pending Plaintiff's motion for costs and attorney's fees pursuant to Federal Rule of Civil Procedure 54 and Local Civil Rule 54.

Baton Rouge, Louisiana, this 28th day of March, 2022

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**