1            UNITED STATES DISTRICT COURT

2            MIDDLE DISTRICT OF LOUISIANA

3

4   TURTLE ISLAND FOODS SPC      : CIVIL ACTION

5   VERSUS                       : NO. 20-674-BAJ-EWD

6   MICHAEL STRAIN               : NOVEMBER 15, 2021

7   ===========================================================
                 MOTIONS FOR SUMMARY JUDGMENT
8               HELD VIA ZOOM VIDEOCONFERENCE
            BEFORE THE HONORABLE BRIAN A. JACKSON
9               UNITED STATES DISTRICT JUDGE

10

                 A P P E A R A N C E S
11

12  FOR THE PLAINTIFF:

13       STERNBERG, NACCARI & WHITE LLC
         BY: SCOTT L. STERNBERG, ESQ.
14       935 GRAVIER STREET
         SUITE 2020
15       NEW ORLEANS, LOUISIANA 70130

16       ANIMAL LEGAL DEFENSE FUND
         BY: AMANDA HOWELL, ESQ.
17       PRO HAC VICE
         525 EAST COTATI AVENUE
18       COTATI, CALIFORNIA 94931

19       JONES WALKER
         BY: MICHAEL ANDREW FOLEY, ESQ.
20       BY: TARAK ANADA, ESQ.
         201 ST. CHARLES AVENUE
21       47TH FLOOR
         NEW ORLEANS, LOUISIANA 70170
22
         THE GOOD FOOD INSTITUTE
23       BY: LAURA R. BRADEN, ESQ.
         1120 CONNECTICUT AVENUE NW
24       SUITE 1080
         WASHINGTON, D.C. 20036
25

1                    A P P E A R A N C E S

2    FOR THE DEFENDANT:

3         BERRIGAN LITCHFIELD, LLC
          BY: E. JOHN LITCHFIELD, ESQ.
4         201 ST. CHARLES AVENUE
          SUITE 4204
5         NEW ORLEANS, LOUISIANA 70170-1044

6

7

8

9

10

11

12

13

14

15

16

17

18

19
          REPORTED BY:  NATALIE W. BREAUX, RPR, CRR
20                  UNITED STATES COURTHOUSE
                       777 FLORIDA STREET
21               BATON ROUGE, LOUISIANA 70801
                       (225) 389-3565
22           NATALIE_BREAUX@LAMD.USCOURTS.GOV

23    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING
             COMPUTER-AIDED TRANSCRIPTION SOFTWARE
24

25

**PROCEEDINGS**

1

2          **THE COURT:**  GOOD MORNING, EVERYONE.  THIS IS

3   JUDGE BRIAN JACKSON.

4                  PLEASE CALL THE CASE.

5          **THE COURTROOM DEPUTY:**  CIVIL ACTION

6   20-674-BAJ TURTLE ISLAND FOODS SPC VERSUS MICHAEL G.

7   STRAIN.

8          **THE COURT:**  COUNSEL, PLEASE ENTER YOUR

9   APPEARANCES AT THIS TIME, BEGINNING WITH COUNSEL FOR

10  THE PLAINTIFF.

11         **MR. STERNBERG:**  GOOD MORNING, YOUR HONOR.

12  I'M SCOTT STERNBERG AND ALONG WITH TARAK ANADA AND

13  MICHAEL FOLEY OF JONES WALKER, AND LAURA BRADEN AND

14  AMANDA HOWELL, WHO ARE HERE PRO HAC VICE.  WE

15  REPRESENT TURTLE ISLAND FOODS SPC D/B/A THE TOFURKY

16  COMPANY.

17         **THE COURT:**  THANK YOU, MR. STERNBERG.  NOW,

18  MR. STERNBERG, I ASSUME THAT YOU WILL BE THE -- YOU

19  WILL MAKE THE ARGUMENT IN THIS MATTER?  YOU WILL BE

20  THE ONLY LAWYER ARGUING FOR THE PLAINTIFF.  IS THAT

21  CORRECT?

22         **MR. STERNBERG:**  IF IT'S ALL RIGHT WITH YOUR

23  HONOR, MS. HOWELL WAS GOING TO TAKE THE PLAINTIFF'S

24  SUMMARY JUDGMENT AND I'M GOING TO TAKE THE

25  DEFENDANT'S SUMMARY JUDGMENT.

**1**      THE COURT:  OKAY.  WELL, WE CAN PROBABLY

**2** TAKE BOTH OF THESE MATTERS UP SIMULTANEOUSLY, BUT --

**3** I DON'T TYPICALLY ALLOW TWO LAWYERS FOR EACH PARTY TO

**4** ARGUE.  HOWEVER, GIVEN THAT THERE ARE TWO MOTIONS

**5** BEFORE THE COURT, I WILL MAKE AN EXCEPTION IN THIS

**6** CASE.

**7**           AND FOR THE DEFENDANT, WHO IS --

**8** COUNSEL, PLEASE ENTER YOUR APPEARANCE.

**9**      MR. LITCHFIELD:  GOOD MORNING, YOUR HONOR.

**10** JOHN LITCHFIELD.  I REPRESENT THE DEFENDANT, WHO IS

**11** MICHAEL STRAIN IN HIS CAPACITY AS THE COMMISSIONER OF

**12** AGRICULTURE FOR THE STATE OF LOUISIANA.

**13**      THE COURT:  GOOD MORNING, MR. LITCHFIELD.

**14** AND I ASSUME THAT YOU WILL HANDLE THE ARGUMENTS FOR

**15** THE COMMISSIONER ON BOTH MOTIONS.  IS THAT CORRECT?

**16**      MR. LITCHFIELD:  YES, SIR, IT'S CORRECT.

**17** THANK YOU.

**18**      THE COURT:  ALL RIGHT.  THANK YOU.

**19**           ALL RIGHT.  THANK YOU ALL AGAIN FOR

**20** JOINING US TODAY.  THIS IS A RATHER UNUSUAL CASE.  IT

**21** IS ALLEGED THAT THERE IS REALLY NO CONTROVERSY IN

**22** THIS CASE.  THE COMMISSIONER HAS INDICATED THAT IT IS

**23** HIS VIEW, MR. STERNBERG, THAT THIS MATTER DOES NOT

**24** EVEN FALL WITHIN THE AMBIT OF THE STATUTE.

**25**           SO LET ME START OFF WITH THE OBVIOUS.

1    IS THERE A CASE IN CONTROVERSY BEFORE THE COURT IN

2    THIS CASE, GIVEN THAT IT APPEARS TO ME THAT BOTH

3    SIDES FUNDAMENTALLY AGREE ON ONE THING; AND THAT IS

4    THAT THE LABELS AT ISSUE HERE ARE NOT -- DO NOT COME

5    WITHIN, AGAIN, THE SCOPE OF THE STATUTE.

6            SO I WILL TURN FIRST TO THE PLAINTIFF.

7    MR. STERNBERG, MS. HOWELL, LET ME GIVE YOU ALL AN

8    OPPORTUNITY TO RESPOND.

9            **MS. HOWELL:**  THANK YOU, YOUR HONOR.  AND

10   I'LL BEGIN BY SAYING THAT WE'RE REALLY HERE TODAY

11   BECAUSE LOUISIANA ENACTED A LAW THAT MAKES IT ILLEGAL

12   FOR PLANT-BASED AND CELL-CULTURED MEAT COMPANIES TO

13   USE MEAT TERMINOLOGY OR REPRESENTATIONS EVEN WHEN

14   THOSE PRODUCTS MAKE CLEAR THEY'RE 100 PERCENT PLANT-

15   BASED, AS PLAINTIFF TOFURKY DOES, AND THAT THEY'RE

16   NOT MADE FROM SLAUGHTERED ANIMALS.

17           THE ACT ACCOMPLISHES THIS BY BANNING

18   CERTAIN THINGS THE STATE HAS DEFINED AND DETERMINED

19   AS INHERENTLY MISLEADING OR MISBRANDING.  JUST

20   LOOKING AT THE PLAIN LANGUAGE OF THE LAW, IT SAYS

21   THAT COMPANIES CANNOT MISBRAND OR MISREPRESENT THEIR

22   PRODUCTS.  AND THEN IT GOES ON TO SAY *HERE IS A LIST*

23   *OF ALL THE THINGS WE ARE SAYING QUALIFY AS*

24   *INTENTIONAL MISREPRESENTATIONS*.

25           LOOKING AT THE LANGUAGE, IT SAYS *IT'S*

1  *ILLEGAL FOR ANY PERSON TO INTENTIONALLY MISPRINT OR*

2  *MISREPRESENT ANY FOOD PRODUCT THROUGH ANY ACTIVITY,*

3  *INCLUDING THE FOLLOWING:*  AND THAT LANGUAGE IS KEY

4  RIGHT THERE.

5             BY THAT *THROUGH ANY ACTIVITY*

6  LABELING -- *INCLUDING THE FOLLOWING*, IT THEN GOES ON

7  TO LIST 12 THINGS, INCLUDING SELLING A FOOD PRODUCT

8  UNDER THE NAME OF ANOTHER AGRICULTURAL PRODUCT, WHICH

9  HAS BEEN DEFINED TO EXCLUDE PLANT-BASED AND CELL-

10 CULTURED MEATS, REPRESENTING A FOOD PRODUCT AS MEAT

11 OR A MEAT PRODUCT.

12             AGAIN, THIS IS BASICALLY SAYING THAT

13 ALL OF THE CONDUCT IN THIS FOLLOWING LIST IS HOW

14 COMPANIES COULD ENGAGE IN SOMETHING THAT THE STATE

15 HAS DETERMINED IS INTENTIONAL MISREPRESENTATIONS.

16        **THE COURT:**  IS THAT REALLY THE CASE?  I

17 MEAN, THE AFFIDAVIT SUBMITTED BY THE COMMISSIONER

18 CLEARLY INDICATES THAT HE DOES NOT BELIEVE THAT YOUR

19 CLIENT'S LABELS OR PRODUCT FALL WITHIN THE AMBIT OF

20 THE STATUTE.  AM I CORRECT ABOUT THAT?

21        **MS. HOWELL:**  YOUR HONOR, I THINK YOU'RE

22 PARTIALLY CORRECT.  I THINK THAT MY UNDERSTANDING OF

23 THE COMMISSIONER'S --

24        **THE COURT:**  *PARTIALLY CORRECT.*  YOU SOUND

25 LIKE THE FIFTH CIRCUIT NOW TELLING ME I'M ONLY

1  PARTIALLY CORRECT.

2          **MS. HOWELL:**  I THINK THAT THE COMMISSIONER,

3  YOUR HONOR, DID NOT GO VERY FAR IN WHAT HE

4  ACKNOWLEDGED AS NOT MISLEADING.  HE LOOKED JUST AT

5  THE FIVE LABELS IN THE COMPLAINTS, DIDN'T ADDRESS ALL

6  OF THE WORLD OF THE LABELS IN ADVERTISING.

7              AGAIN, THIS LAW DOESN'T JUST APPLY TO

8  TOFURKY'S LABELS.  IT ALSO APPLIES TO ALL OF ITS

9  ONLINE ADVERTISING, MARKETING, VIDEOS, THINGS LIKE

10 THAT.  THE COMMISSIONER'S DECLARATION DOESN'T SAY

11 ANYTHING LIKE THAT.  AND IT ALSO KIND OF GOES ON TO

12 SAY THAT HE RESERVES THE RIGHT TO CHANGE HIS MIND

13 ABOUT --

14         **THE COURT:**  LET ME ASK YOU THIS.  IT'S MY

15 UNDERSTANDING -- AND MR. LITCHFIELD WILL CORRECT ME

16 IF I'M INCORRECT HERE -- THAT THE COMMISSIONER HAS

17 REVIEWED SOMETHING ON THE ORDER OF NINE LABELS.  YOUR

18 CLIENT I BELIEVE HAS SOMETHING ON THE ORDER OF

19 30-SOME LABELS.

20             CAN'T THIS MATTER SIMPLY BE RESOLVED BY

21 SUBMITTING ALL 30-SOME LABELS TO THE COMMISSIONER FOR

22 HIS REVIEW AND DETERMINATION AT THIS TIME?  AND

23 ASSUMING HE REVIEWS OR HIS STAFF REVIEWS THE LABELS

24 AND THEY CONCLUDE THAT THESE LABELS ARE NOT

25 MISLEADING IN ANY WAY, WHERE IS THE CONTROVERSY HERE?

1   WHERE IS THE COURT'S JURISDICTION?

2          **MS. HOWELL:**  TO ANSWER YOUR QUESTION, YOUR

3   HONOR, I DON'T BELIEVE THAT SUBMITTING ALL -- HOWEVER

4   MANY LABELS -- WOULD ACTUALLY RESOLVE THE CONTROVERSY

5   HERE.  YOU KNOW, I THINK THAT AS A COMPANY THEY

6   SHOULD BE ABLE TO CHANGE THE LABELS THAT MIGHT APPLY

7   TO THE LABELS CURRENTLY RIGHT NOW.  BUT I KNOW THAT

8   TOFURKY HAS CONSTANTLY IN DEVELOPMENT NEW PRODUCTS.

9   AS I SAID, THE ONLINE MARKETING AND ADVERTISING WILL

10  CHANGE.  AND FRANKLY, I THINK THE COMMISSIONER IS --

11  IT'S MY UNDERSTANDING IS UP FOR RE-ELECTION SOON AND

12  THAT MAY CHANGE.

13          SO FRANKLY, ASKING COMPANIES TO

14  ESSENTIALLY SUBMIT THEMSELVES TO PREMARKET LABEL

15  APPROVAL FROM WHATEVER COMMISSIONER HAPPENS TO BE

16  LOOKING AT THEIR LABELS DOESN'T ACTUALLY RESOLVE THE

17  CONSTITUTIONAL DEFICIENCIES OF THIS LAW.

18          **THE COURT:**  MS. HOWELL, LET ME GIVE MR.

19  LITCHFIELD AN OPPORTUNITY TO REPLY.

20          **MR. LITCHFIELD:**  THANK YOU VERY MUCH, YOUR

21  HONOR.

22          THANK YOU, COUNSEL.

23          YOUR HONOR, I DISAGREE WITH HER.  I

24  MEAN, I THINK THIS IS ABSOLUTELY CLEAR.  THE

25  COMMISSIONER -- AS YOU RECALL, YOUR HONOR, WE HAD A

1  STATUS CONFERENCE WHEN TOFURKY ASKED FOR A TRO.  I

2  CONCEDED -- AND VERY, VERY WILLINGLY DID SO -- THAT

3  THE COMMISSIONER HAD NOT LOOKED AT THOSE LABELS.  HE

4  JUST RECENTLY HAD BEEN SERVED THE LAWSUIT.  WE SAID

5  WE WERE NOT GOING TO ENFORCE IT IN ANY CAPACITY UNTIL

6  YOUR HONOR HAS MADE A DECISION THAT THIS CASE HAS

7  BEEN RESOLVED.  WE'VE DONE THAT.

8            SINCE THAT TIME, YOUR HONOR, THE COURT

9  -- MY CLIENT HAS LOOKED AT THE LABELS AND FOUND

10  NOTHING WRONG WITH THE LABELS.  THE WAY HE INTERPRETS

11  THE STATUTE AND THE WAY I THINK IT'S EASILY

12  UNDERSTOOD IS YOU NEED AN INTENTIONAL MISBRANDING OR

13  INTENTIONAL MISREPRESENTATION.  THERE IS NONE.

14            NOW, TOFURKY SAYS, *WELL, MAYBE WE WILL

15  IN THE FUTURE.*  WELL, I CAN'T -- I CANNOT ADVISE MY

16  CLIENT WHAT TOFURKY MAY OR MAY NOT DO IN THE FUTURE.

17  IF THEY SAY TO YOUR HONOR *WE INTEND TO DEVELOP A

18  LABEL.  WE'RE CONSTANTLY DEVELOPING LABELS.  MAYBE

19  WE'LL DEVELOP ONE THAT WE INTENTIONALLY MISBRAND OR

20  MISREPRESENT A PRODUCT*, WELL, THEN WE'LL HAVE A

21  PROBLEM.  THEN THEY CAN FILE SUIT IF THEY THINK IT'S

22  STILL UNCONSTITUTIONAL.

23            BUT THE NINE LABELS, YOUR HONOR, I CAN

24  ONLY DEAL -- MY CLIENT CAN ONLY DEAL WITH THE NINE

25  LABELS THAT WERE PRESENTED TO THIS COURT FOR

1    CONSIDERATION.  AND THAT'S WHAT WE'VE DONE, THAT'S

2    WHAT HE'S DETERMINED.  HE SAID IT UNDER OATH.  IT'S

3    RECORD, YOUR HONOR.

4              THERE IS A CASE OUT THERE -- I THINK

5    IT'S *GLENN VS. HOLDER*, WHICH SAYS THAT YOU CAN'T JUST

6    ASSUME THAT SOME ROGUE PROSECUTOR ON THIS CASE, ROGUE

7    COMMISSIONER OF AGRICULTURE, WILL COME IN THERE AND

8    ALL OF A SUDDEN CHANGE EVERYTHING THAT COMMISSIONER

9    STRAIN HAS DONE, NO. 1.

10             NO. 2, HE'S A LONG-TERM COMMISSIONER OF

11   AGRICULTURE.  HE'S LIKELY TO BE THERE HIS WHOLE LIFE.

12   BUT THAT'S IRRELEVANT.

13             WHAT'S RELEVANT IS THAT HE IS THE

14   AUTHORITY CHARGED BY THE STATE OF LOUISIANA WITH

15   ENFORCING THIS.  AND HE HAS DETERMINED OFFICIALLY AND

16   OF RECORD THAT THESE LABELS DO NOT INTENTIONALLY

17   MISBRAND OR MISREPRESENT.

18             I FIND IT ODD THAT --

19         **THE COURT:**  MR. LITCHFIELD, LET ME TELL YOU,

20   I UNDERSTAND YOUR ARGUMENT AND YOU'RE ABSOLUTELY

21   RIGHT.  HISTORICALLY, IN LOUISIANA, COMMISSIONERS OF

22   AGRICULTURE HAVE SERVED FOR MULTIPLE TERMS IN OFFICE.

23   BUT THERE IS STILL, OF COURSE, THE THREAT OF

24   ENFORCEMENT, I BELIEVE, THAT MS. HOWELL AND HER

25   CLIENT ARE CONCERNED ABOUT EITHER BY COMMISSIONER

1  STRAIN OR A FUTURE COMMISSIONER.

2           AND SO WOULD YOU AT LEAST AGREE WITH ME

3  THAT THERE NONETHELESS IS A THREAT OF POSSIBLE FUTURE

4  ENFORCEMENT OF THIS STATUTE AGAINST THE PLAINTIFF?

5       **MR. LITCHFIELD:**  NO, SIR, I DO NOT.  AND I

6  THINK SO BECAUSE I THINK ANY REASONABLE READING OF

7  TITLE 34 § 4744, WHICH IS THE ACT IN QUESTION,

8  PARTICULAR PROHIBITED ACTIVITIES, WOULD NOT ALLOW IT.

9  AND I DON'T THINK ANYBODY WHO IS SWORN TO UPHOLD THE

10 CONSTITUTION OF THE STATE OF LOUISIANA OR THE UNITED

11 STATES OF AMERICA WOULD FIND THESE LABELS TO BE

12 PROHIBITIVE OF THIS PARTICULAR STATUTE, THE ONE THAT

13 THIS COURT MUST CONSIDER.

14           SO I DON'T THINK SO, YOUR HONOR, AND I

15 DON'T AGREE.  I DON'T THINK IT'S EVEN CREDIBLE.

16       **THE COURT:**  ALL RIGHT.  MS. HOWELL, MR.

17 STERNBERG, YOU ESSENTIALLY ARGUE THAT THE ACT IS MORE

18 EXTENSIVE THAN IS NECESSARY TO PROMOTE THE

19 GOVERNMENT'S INTEREST IN THIS CASE.  IS THAT CORRECT?

20       **MR. STERNBERG:**  YES, YOUR HONOR.  IF I MAY

21 BRIEFLY ADDRESS MR. LITCHFIELD'S COMMENTS JUST NOW,

22 AS THE STANDING ARGUMENT IS KIND OF MY PIECE OF THIS.

23       **THE COURT:**  ALL RIGHT.

24       **MR. STERNBERG:**  AND I JUST WANT TO MAKE A

25 QUICK POINT, IF I CAN.

1          THE COURT:  SURE.

2          MR. STERNBERG:  YOUR HONOR, OF COURSE

3  STANDING IS A PART OF SUBJECT MATTER JURISDICTION,

4  BUT IT IS NOT ITSELF SUBJECT MATTER JURISDICTION, AS

5  YOUR HONOR KNOWS WELL.

6              THE QUESTION POSED BY THE SUPREME COURT

7  IN TWO CASES -- IN *LUJAN* AND ALSO IN *LAIDLAW*

8  *ENVIRONMENTAL SERVICES* -- IS WHETHER THE PLAINTIFF

9  HAD STANDING AT THE TIME THE LAWSUIT WAS FILED.

10             IN THIS COMPLAINT, WE CLEARLY STATE IN

11  PARAGRAPH 58, 59, 60 AND 61 THAT THE LABELS SUBMITTED

12  ARE ILLUSTRATIVE; THEY ARE NOT NECESSARILY LIMITED TO

13  ALL OF THE LABELS THAT WE HAVE IN CIRCULATION.  IN

14  FACT, IN PARAGRAPH 62 WE ALLEGE THAT WE HAVE NUMEROUS

15  PRODUCTS IN CIRCULATION, UP TO 35 AT TARGET AND WHOLE

16  FOODS AND ROUSES AND WINN-DIXIE AND ALL OF THAT, ALL

17  OF OUR LOCAL STORES.

18             BUT THE LOSS OF FIRST AMENDMENT FREEDOM

19  FOR EVEN A MINIMAL AMOUNT OF TIME -- OR THE

20  INFRINGEMENT, THE CHILLING, FOR EVEN A MINIMAL AMOUNT

21  OF TIME -- YOUR HONOR, IS ITSELF INJURY.  IN

22  FACT, ACCORDING TO THE SUPREME COURT AND THE FIFTH

23  CIRCUIT AND PARTICULARLY THE *SPEECH FIRST* CASE WHICH

24  JUST CAME OUT IN 2020, JUST THE CHILLING OF SPEECH IS

25  ENOUGH TO CONSTITUTE HARM.

1    NOW, WE HAVE AN AFFIDAVIT FROM OUR

2  CLIENT AT EXHIBIT C -- THAT'S 37-3 IN THE RECORD --

3  THAT SAYS -- WHERE HE SWORE UNDER PENALTY OF PERJURY

4  THAT HE HAS HAD TO ADJUST HIS ADVERTISING, THAT HE

5  HAS HAD TO CHANGE HIS LABELS, THAT HE IS SCARED OF OR

6  FEARS ENFORCEMENT, NOT NECESSARILY BECAUSE MR. STRAIN

7  IS GOING TO LOSE RE-ELECTION.  THAT'S NOT THE

8  PROBLEM.

9    THE PROBLEM IS BECAUSE THE ACT IS SO

10  VAGUE THAT IT COULD THEORETICALLY ENCOMPASS ANY ONE

11  OF HIS LABELS.  HAVING TO SUBMIT THE LABELS TO THE

12  COMMISSIONER OF AGRICULTURE FOR WHAT EFFECTIVELY

13  RESULTS TO PRIOR REVIEW AKIN TO *HAZELWOOD VS.*

14  *KUHLMEIER*, YOUR HONOR, THAT THE QUESTION THERE IS A

15  BROADER REGULATION VIA *CENTRAL HUDSON.*  THEN EVEN

16  *CENTRAL HUDSON* WOULD ALLOW THAT THE IDEA THAT WE

17  WOULD HAVE TO SUBMIT THEM ALL AND THEN GET APPROVAL.

18  THAT WOULD BE A WORK-AROUND, YOUR HONOR.  I'M NOT

19  SAYING THAT THAT WOULDN'T WORK.  BUT I AM SAYING THAT

20  THAT WOULD NOT BE CONSTITUTIONALLY PERMISSIBLE UNDER

21  THE *CENTRAL HUDSON* TEST.

22    AS IT RELATES TO THE SUBSTANTIAL

23  GOVERNMENT INTEREST, YOUR HONOR -- BECAUSE THAT WAS

24  ACTUALLY YOUR QUESTION.

25    **THE COURT:**  RIGHT.

**1**      **MR. STERNBERG:**  I WOULD LIKE TO POINT OUT

**2** THAT I DON'T NECESSARILY DISAGREE THAT THE STATE

**3** DOESN'T HAVE A SUBSTANTIAL GOVERNMENT INTEREST IN,

**4** YOU KNOW, ACCURATE LABELS.  BUT I THINK THAT OUR

**5** LABELS ARE ACCURATE.  AND THE DEFINITION OF THIS

**6** STATUTE SAYS THEY ARE INACCURATE BECAUSE OF THE WAY

**7** IT IS WORDED.  MR. STRAIN'S AFFIDAVIT ATTEMPTS TO

**8** REFORM --

**9**      **THE COURT:**  BUT HOW DOES IT DESCRIBE WHAT

**10** YOU'RE -- WHAT DO YOU MEAN BY THAT?  HOW IS IT THAT

**11** THIS STATUTE NECESSARILY AND INHERENTLY FINDS -- OR

**12** HOW DOES IT MAKE YOUR CLIENT'S LABELS UNCONSTITU --

**13** WELL, HOW DOES THE STATUTE MAKE IT -- HOW IS IT

**14** PROSCRIBED FROM THE CURRENT LABELS?  I GUESS MY POINT

**15** IS SIMPLY THAT THE LEGISLATURE ACTED, THE OFFICIAL

**16** CHARGE WITH ENFORCING THE STATUTE HAS CONSIDERED AT

**17** LEAST THOSE LABELS THAT HAVE BEEN SUBMITTED AND HAS

**18** DETERMINED THAT THEY DON'T VIOLATE THE LAW.  RIGHT?

**19**      NOW, WE'VE ALREADY ESTABLISHED THAT THE

**20** GOVERNMENT DOES HAVE AN INTEREST TO -- IN PROHIBITING

**21** DECEPTIVE LABELING.  DO WE AGREE WITH THAT?

**22**      **MR. STERNBERG:**  OF COURSE, YOUR HONOR.  THE

**23** GOVERNMENT HAS AN INTEREST AND ALREADY HAS NUMEROUS

**24** LAWS AVAILABLE TO ELIMINATE DECEPTIVE OR MISLEADING

**25** LABELS.

**1**         **THE COURT:**  AND SO WHEN -- THE OFFICIAL

**2** CHARGE WHEN DETERMINING IF IT WAS DECEPTIVE HAS

**3** ALREADY, IN FACT, DETERMINED THAT IT'S NOT DECEPTIVE.

**4** I'M NOT GOING TO ENFORCE IT BECAUSE THESE LABELS --

**5** THIS STATUTE DOES NOT APPLY TO THESE LABELS.

**6**         **MR. STERNBERG:**  AND, YOUR HONOR, I THINK THE

**7** QUESTION IS MISTER -- EXCUSE ME -- DR. STRAIN,

**8** BECAUSE HE'S A VETERINARIAN.  DR. STRAIN'S ACTUAL

**9** REFORMATION OF THE STATUTE IN HIS AFFIDAVIT IS PART

**10** OF THE PROBLEM.  HE SAYS THAT THE LAW ONLY APPLIES TO

**11** FALSE OR MISLEADING SPEECH, WHEN IN ACTUALITY WHAT

**12** THE STATUTE SAYS AT B, IT SAYS THAT THE 44 -- 47 AND

**13** 44(B) SAYS *NO PERSON SHALL INTENTIONALLY MISBRAND OR*

**14** *MISREPRESENT ANY FOOD PRODUCT THROUGH ANY ACTIVITY*

**15** *INCLUDING:*  AND THEN IT LISTS A BUNCH OF THINGS THAT

**16** WE DO.

**17**         WE DEFINITELY DO THIS.  WE DEFINITELY

**18** REPRESENT A FOOD PRODUCT AS MEAT.  WE DEFINITELY

**19** REPRESENT A FOOD PRODUCT AS PORK.  WE UTILIZE TERMS

**20** THAT ARE THE SAME OR DECEPTIVELY SIMILAR TO A TERM

**21** THAT HAS BEEN USED OR DEFINED HISTORICALLY IN

**22** REFERENCE TO A SPECIFIC AGRICULTURAL PRODUCT LIKE

**23** BURGER OR SAUSAGE OR KIELBASA.

**24**         THESE ARE WORDS THAT WE USE AND THAT WE

**25** SWEAR IN OUR AFFIDAVIT THAT WE USE AND ALSO THAT

1   WE'VE PUT IN OUR COMPLAINT AT PARAGRAPH 60:

2   KIELBASA, SAUSAGE, HOT DOG, BRAT, BOLOGNA, HAM, ROAST

3   AND BURGER, WE USE ALL OF THOSE CURRENTLY IN THE

4   ADVERTISEMENT AND PROMOTION OF OUR PRODUCTS

5   TRUTHFULLY, YOUR HONOR.

6          **THE COURT:**  LET ME MOVE THIS ALONG JUST A

7   BIT, MR. STERNBERG.  ASSUMING THAT I FIND THAT THE

8   COURT HAS JURISDICTION, ASSUMING THAT I FIND THAT

9   THERE IS A CONTROVERSY HERE, WHY SHOULD YOU PREVAIL

10  IN YOUR MOTION FOR SUMMARY JUDGMENT?

11         **MR. STERNBERG:**  YOUR HONOR, I'LL HAND OFF TO

12  MS. HOWELL FOR THAT BECAUSE THAT'S HER AMBIT, IF IT'S

13  ALL RIGHT WITH YOUR HONOR.

14         **MS. HOWELL:**  THANK YOU, MR. STERNBERG.

15              AND THANK YOU, YOUR HONOR.

16              JUST TO KIND OF REDIRECT THIS, I

17  THINK THAT -- AND TO ANSWER YOUR QUESTION, I THINK

18  THAT DISCUSSING WHETHER OR NOT THESE LABELS ARE

19  CONSIDERED BY THE COMMISSIONER -- WHETHER OR NOT HE

20  CONSIDERS THESE LABELS MISLEADING OR NOT IS A LITTLE

21  BIT OF A RED HERRING.  AND IT'S REALLY THE STATE'S

22  ATTEMPT TO SIDESTEP THEIR BURDEN UNDER *CENTRAL*

23  *HUDSON*.

24              THE FRANK ANSWER IS THESE LABELS DO

25  FALL UNDER THE AMBIT OF THE LAW, AND THE LAW ITSELF

1   IS UNCONSTITUTIONAL UNDER *CENTRAL HUDSON*.  THE STATE

2   HAS NOT DONE ANYTHING TO MEET ITS BURDEN UNDER

3   *CENTRAL HUDSON* EXCEPT SAY THE STANDARD DOESN'T APPLY.

4         BUT, YOU KNOW, WE ALL KNOW THE PARTIES

5   SEEKING TO UPHOLD A RESTRICTION ON COMMERCIAL SPEECH

6   BEARS THAT HEAVY BURDEN TO JUSTIFY IT, AND IT CANNOT

7   BE MET BY MERE SPECULATION OR CONJECTURE.  HERE WE

8   HAVE LABELS THAT EVERYONE IS SAYING *SURE, THEY'RE*

9   *TRUTHFUL AND NOT MISLEADING*.  EVERYONE IS FINE SAYING

10  THAT OF COURSE THERE IS A SUBSTANTIAL GOVERNMENT

11  INTEREST IN PREVENTING CONSUMER CONFUSION.

12         THE PROBLEM HERE, YOUR HONOR, IS THERE

13  IS ABSOLUTELY NO EVIDENCE IN THE RECORD OR OUTSIDE OF

14  THE RECORD EVEN SHOWING THAT THERE IS ANY EVIDENCE OF

15  CONSUMER CONFUSION.  FRANKLY, CONSUMERS KNOW WHAT

16  THEY'RE BUYING WHEN THEY GO TO THE STORE AND BUY A

17  TOFURKY VEGETARIAN HAM ROAST.  THEY ARE NOT THINKING

18  THAT THEY'RE BUYING AN ENTIRE TURKEY CARCASS WHEN

19  THEY BUY THESE TINY, LITTLE PACKAGES LABELED WITH

20  PROMINENT THINGS LIKE *PLANT-BASED*.

21         SO WHILE WE WOULD BE HAPPY TO SAY --

22  YOU KNOW, IF CONSUMER CONFUSION EXISTED, THEY MIGHT

23  MEET THE FIRST TWO PRONGS UNDER *CENTRAL HUDSON*.  THE

24  REALLY PROBLEM IS THAT BECAUSE THERE IS NO CONSUMER

25  CONFUSION, THEY CANNOT SHOW THAT THIS LAW DOES

1  ANYTHING TO DIRECTLY ADVANCE ANY OF THAT SUBSTANTIAL

2  GOVERNMENT INTEREST.  THEY CAN'T SAY THAT IT IS

3  NARROWLY TAILORED TO ADVANCE THAT SUBSTANTIAL

4  GOVERNMENT INTEREST.

5           YOU KNOW, THIS IS A BLANKET RESTRICTION

6  ON SPEECH, A BAN ON SPEECH.  AND, YOU KNOW, THEY

7  HAVEN'T EVEN DEMONSTRATED THAT CONSUMER CONFUSION IS

8  REAL BEFORE BANNING THIS ENTIRE SPEECH.  BUT --

9          **THE COURT:**  SO --

10         **MS. HOWELL:**  -- THE FAIR THING TO DO --

11         **THE COURT:**  WAIT.  LET ME GIVE MR.

12  LITCHFIELD AN OPPORTUNITY TO REPLY.

13          AND SPECIFICALLY, MR. LITCHFIELD, DO

14  YOU AGREE THAT THE LABELS AT ISSUE HERE DO NOT CAUSE

15  CONSUMER CONFUSION?

16         **MR. LITCHFIELD:**  YOUR HONOR -- THANK YOU

17  VERY MUCH, YOUR HONOR.

18          THEY THROW IN THE WORDS *CONSUMER*

19  *CONFUSION*.  THE LAW IS CLEAR.  TITLE 3 § 4742,

20  *PURPOSE*.  I'LL READ IT, YOUR HONOR.  IT'S VERY SHORT.

21  "THE PURPOSE OF THIS PART IS TO PROTECT CONSUMERS

22  FROM MISLEADING AND FALSE LABELING OF FOOD PRODUCTS

23  THAT ARE EDIBLE BY HUMANS."  THE LEGISLATURE HAS NOT

24  MADE IT DIFFICULT FOR US TO UNDERSTAND WHAT THEIR

25  INTENT WAS.  THAT'S WHAT THEY WANT TO DO.  *CENTRAL*

1     *HUDSON* SAYS, YOUR HONOR, THE STATE CAN BAN COMMERCIAL

2     SPEECH WHICH IS MISLEADING.  THAT'S WHAT THIS ACT

3     DOES.

4             ANYTHING BEYOND THAT, YOUR HONOR, WE

5     ARE IN THE REALM OF DEALING WITH HYPOTHETICALS.  AND

6     THAT'S EXACTLY WHAT THE UNITED STATES SUPREME COURT

7     SAID IN *VALLEY FORGE* WE SHOULD NOT DO.  WE SHOULD NOT

8     GET INTO THE SITUATION WHERE WE START TALKING ABOUT

9     HYPOTHETICALS.  THIS IS NOT SOME -- AS THEY SAID,

10    SOME COLLEGE DEBATING SOCIETY.

11           MR. STERNBERG AND MS. HOWELL ARE

12    EXCELLENT LAWYERS, YOUR HONOR, AND I'D LOVE TO DEBATE

13    THESE ISSUES WITH THEM OVER A GLASS OF WINE AT THE

14    WINDSOR COURT.  BUT THAT'S NOT WHAT YOUR HONOR HAS

15    GOT THE TIME TO DO.

16           WHAT YOUR HONOR -- THIS -- I THINK IT'S

17    CLEAR THAT *CENTRAL HUDSON* SAYS THE STATE CAN BAN

18    MISLEADING SPEECH, MISBRANDING.  AND THAT'S ALL THIS

19    ACT DOES.  IT DOESN'T --

20         **MS. HOWELL:** YOUR HONOR --

21         **THE COURT:**  MR. LITCHFIELD, DOES IT MATTER

22    IF THERE IS A VERY PROMINENT DISCLAIMER AFFIXED TO

23    THE LABEL?

24         **MR. LITCHFIELD:**  YEAH, I THINK IT WOULD.  I

25    THINK IT ALL GOES TOWARD WHETHER OR NOT SOMETHING IS

1   MISBRANDED OR MISREPRESENTING.  FOR INSTANCE, YOUR

2   HONOR -- AND IF I COULD JUST QUICKLY ADDRESS ONE OF

3   MR. STERNBERG'S ARGUMENTS.  HE WAS ARGUING ABOUT THE

4   LABELS ARE SIMPLY ILLUSTRATIVE.  I CAN ONLY DEAL --

5   MY CLIENT CAN ONLY DEAL, YOUR HONOR, WITH WHAT'S

6   BEFORE THIS COURT.  I HUMBLY SUGGEST THIS COURT CAN

7   ONLY DEAL WITH WHAT'S BEFORE THIS COURT.

8             IN ANSWER TO YOUR QUESTION, OF COURSE I

9   THINK IT DOES.  IF SOMETHING IS MISBRANDED -- LET ME

10  GIVE YOU AN EXAMPLE.  AND THIS DEALS WITH MS.

11  HOWELL'S ARGUMENT.

12            IF YOU LOOK AT § 4744(B)(11), THAT'S

13  WHAT I THINK SHE'S TRYING TO SAY, IN ESSENCE.  SHE'S

14  TRYING TO SAY THIS:  THE STATUTE SAYS, YOUR HONOR, NO

15  PERSON SHALL INTENTIONALLY MISBRAND OR MISREPRESENT

16  ANY FOOD PRODUCT AS AN AGRICULTURAL PRODUCT THROUGH

17  ANY ACTIVITY INCLUDING, AND THEN IT'S GOT 12

18  EXAMPLES.

19            ONE OF THEM, FOR INSTANCE -- AND THEY

20  BROUGHT THIS UP IN BRIEF -- WAS REPRESENTING A CELL-

21  CULTURED FOOD PRODUCT AS A MEAT PRODUCT.  WELL,

22  SOMEBODY COULD ON THE FACE OF IT, YOUR HONOR -- NOT

23  TOFURKY BECAUSE I'M SURE IT'S A REPUTABLE COMPANY.

24  BUT SOME COMPANY COULD SAY -- COULD HAVE A CELL-

25  CULTURED FOOD PRODUCT AND SAY *THIS IS A HOT DOG.  I'M*

1  *SELLING YOU A HOT DOG.  I'M LABELING IT AS A HOT DOG.*

2  NO -- NO DISCLAIMER, NO SUGGESTION OTHERWISE.

3  NOTHING.

4  THAT'S NOT WHAT TOFURKY'S LABELS DO

5  HERE.  AND THAT'S WHY THERE IS NO CONTROVERSY, NO.

6  1 -- CASE OR CONTROVERSY.  BUT MORE IMPORTANTLY OR

7  JUST AS IMPORTANTLY IS *CENTRAL HUDSON* LET'S US

8  BRAND -- LET'S US STOP MISBRANDING LIKE THAT, LET'S

9  US STOP MISREPRESENTATIONS TO THE PUBLIC ABOUT WHAT

10  THEY'RE EATING.

11  UNFORTUNATELY FOR MISS -- AND I HATE TO

12  USE THIS WORD *UNFORTUNATELY*.  BUT UNFORTUNATELY FOR

13  TOFURKY IN THIS PARTICULAR CONTEXT THEIR LABELS ARE

14  OKAY.  THEY DON'T DO THAT.  I KNOW IT'S ODD.  THEY

15  SEEM TO WANT TO ARGUE THEY DO, BUT THEY DON'T.

16  **THE COURT:**  OKAY.  NO, I MEAN -- AND THAT'S

17  A LEGITIMATE ARGUMENT, CERTAINLY A CONCERN THAT I

18  HAVE.

19  MS. HOWELL, IS THERE -- I'LL JUST ASK

20  YOU:  IS THERE A DISCLAIMER ON EACH OF THE LABELS AND

21  WHERE IS THAT DISCLAIMER AFFIXED?

22  **MS. HOWELL:**  OF COURSE.  TOFURKY LIKE ALL

23  OTHER PLANT-BASED PRODUCERS USE THESE DISCLAIMERS ON

24  THEIR PRINCIPAL DISPLAY PANELS TO MAKE IT VERY CLEAR

25  TO CONSUMERS THEY ARE PLANT-BASED AND NOT MEAT.  BUT

1    I REALLY DON'T THINK THAT'S THE ISSUE HERE.

2              I THINK THAT THE ISSUE HERE IS THAT

3    THIS -- I THINK WE HAVE A FUNDAMENTAL DISAGREEMENT

4    ABOUT -- FIRST OF ALL, THERE IS NO SAFE HARBOR IN THE

5    LANGUAGE OF THE LAW THAT SAYS IF YOU HAVE A

6    DISCLAIMER, THEN YOU'RE FINE, THIS LAW DOESN'T APPLY

7    TO YOU.  THAT'S NOWHERE IN THE LANGUAGE OF THE LAW

8    ANYWHERE.

9         **THE COURT:**  LET ME STOP YOU THERE, MS.

10   HOWELL, BECAUSE YOU RAISE A GOOD POINT.  AND LET'S

11   LOOK AT THE MISSISSIPPI -- THE RESOLUTION IN THE

12   MISSISSIPPI CASE, WHICH WAS RESOLVED AFTER THE

13   COMMISSIONER PROMULGATED A REGULATION.  IS THAT

14   RIGHT?

15        **MS. HOWELL:**  I THINK THAT THAT WAS HOW THAT

16   CASE DID SETTLE OUT AFTER COMMUNICATIONS BETWEEN THE

17   PARTIES.  BUT THE REGULATIONS THERE CURED THAT AND

18   DID CARVE OUT A SAFE HARBOR FOR DISCLAIMERS IN THE

19   QUALIFYING LANGUAGE --

20        **THE COURT:**  SO THE QUESTION, MS. HOWELL --

21   MS. HOWELL, THE QUESTION IS THEN IF THE

22   COMMISSIONER -- AND I UNDERSTAND YOUR CONCERN; THAT

23   ANYTHING COULD HAPPEN TO THE COMMISSIONER, GOD

24   FORBID; THAT A NEW COMMISSIONER COULD COME IN; THE

25   COMMISSIONER CAN CHANGE HIS MIND.  AND SO THERE IS

1  NOTHING THAT THE COMMISSIONER HAS DONE OTHER THAN

2  SUBMIT AN AFFIDAVIT THAT FEATURES THE FORCE OF LAW.

3  RIGHT?

4        WOULD THAT CHANGE IF THE COMMISSIONER

5  ACTUALLY PROMULGATED A REGULATION THAT IN EFFECT

6  SAID -- AND I HAVEN'T SEEN THE MISSISSIPPI

7  REGULATION.  BUT SUPPOSE IT SAYS THAT AS LONG AS

8  THERE IS A PROMINENT DISCLAIMER ON THE FACE OF THE

9  LABEL, THAT'S -- YOU KNOW, THAT IS SUFFICIENT TO

10 AVOID ANY CIVIL LIABILITY?

11       MS. HOWELL:  FRANKLY, I THINK THAT THE

12 MISSOURI REGULATIONS STILL MAKE ME UNCOMFORTABLE

13 BECAUSE AT THE END OF THE DAY THAT LAW IS STILL ON

14 THE BOOKS.  REGULATIONS CAN BE CHANGED AND

15 PROMULGATED DIFFERENTLY.

16       I THINK THAT THE REGULATIONS THEMSELVES

17 CANNOT CHANGE THE UNDERLYING STATUTE.  THEY CANNOT

18 CURE THOSE CONSTITUTIONAL DEFICIENCIES.  AND I

19 VEHEMENTLY DISAGREE WITH THE PLAIN LANGUAGE READING

20 BY MR. LITCHFIELD.

21       I THINK THAT, AGAIN, THIS -- JUST THE

22 PLAIN LANGUAGE OF THE LAW SAYS THESE FOLLOWING THINGS

23 WE HAVE DETERMINED -- ARE THINGS THAT WE HAVE

24 DETERMINED TO BE INTENTIONALLY MISLEADING OR

25 MISBRANDING.  AND IT GOES ON TO DEFINE OUT FROM THE

1   DEFINITIONS OF MEAT, BEEF, POULTRY, ANYTHING THAT IS

2   PRODUCED BY OUR CLIENT, OR OTHER PLANT-BASED

3   PRODUCERS.  AND THEY SAY THAT BASICALLY USING THE

4   NAME *MEAT,* USING THE NAME *SAUSAGE,* USING ANY OF THESE

5   THINGS -- AND IT DOESN'T SAY ANYTHING ABOUT

6   DISCLAIMERS -- RUNS AFOUL OF THESE PROVISIONS AND

7   THUS CONSTITUTE INTENTIONALLY MISBRANDING CONDUCT,

8   WHICH IS PROHIBITED BY THE LAW.

9        **THE COURT:**  ALL RIGHT.  GO AHEAD.

10       **MS. HOWELL:**  AND AGAIN, I THINK IT'S VERY

11  CLEAR THAT IF WE'RE DEALING WITH SUCH A BROAD BAN ON

12  SPEECH -- AND AGAIN, THIS IS NOT JUST BANNING

13  MISLEADING SPEECH.  IT'S BANNING THE SPEECH LISTED

14  DOWN HERE IN THOSE 12 THINGS.  AND THERE IS NO

15  EVIDENCE WHATSOEVER OF CONSUMER CONFUSION.

16       AND ONCE MORE, IF THE LAW WAS DESIGNED

17  JUST TO PROHIBIT MISLEADING SPEECH, I THINK THAT THIS

18  LAW IS FRANKLY UNNECESSARY.  THERE IS THE LOUISIANA

19  FOOD, DRUG, AND COSMETIC ACT BANS MISLEADING SPEECH

20  OR MISBRANDED LABELS.  THERE IS THE FEDERAL FOOD,

21  DRUG, AND COSMETIC ACT.  THERE IS LOUISIANA'S

22  CONSUMER PROTECTION STATUTES.  THOSE THINGS ALREADY

23  BAN MISLEADING SPEECH.  IF THIS LAW DIDN'T DO

24  ANYTHING MORE TO EXPAND THE DEFINITION OF WHAT IS

25  MISBRANDING, THEN I DON'T UNDERSTAND THE POINT OF IT

1    AND I DON'T UNDERSTAND WHY IT WAS NECESSARY.

2                I THINK THAT THAT'S KIND OF SEEN IN THE

3    LEGISLATIVE HISTORY.  BUT I DON'T EVEN THINK WE NEED

4    TO GO SO FAR AS TO LOOK AT THOSE LEGISLATORS SAYING

5    THAT THEIR INTENT WAS TO PROTECT THE ANIMAL

6    INDUSTRIES OF LOUISIANA.  I THINK IF YOU JUST LOOK AT

7    THE LANGUAGE AND -- AND I THINK THAT THAT IS CLEAR

8    THAT IT WAS INTENDED TO --

9           **THE COURT:**  MS. HOWELL -- YOU WOULD AGREE

10   WITH ME, MS. HOWELL, THAT THERE IS NOTHING THAT -- IN

11   THE U.S. CONSTITUTION -- THAT PREVENTS A STATE

12   LEGISLATURE FROM ENACTING MULTIPLE STATUTORY

13   PROVISIONS THAT MIGHT RESULT IN THE SAME -- HAVE THE

14   SAME EFFECT.  RIGHT?

15          **MS. HOWELL:**  OF COURSE.  AND I WOULD AGREE

16   WITH YOU.  IT'S JUST THAT MISBRANDING SPEECH IS

17   ILLEGAL UNDER THIS PROVISION HERE, AS WELL AS A LOT

18   OF OTHER ONES.  BUT THIS IS SAYING THAT THIS CONDUCT

19   THAT OUR CLIENT IS ENGAGED IN CONSTITUTES MISBRANDING

20   AND MISLEADING SPEECH.

21               AND I THINK THAT THAT REALLY IS THE

22   CRUX OF THE ISSUE, IS DOES THIS LAW APPLY TO OUR

23   CLIENTS?  NOT WHETHER OUR CLIENT'S LABELS ARE

24   TRUTHFUL OR MISLEADING OR WHAT THE COMMISSIONER IS OR

25   IS NOT GOING TO DO.  I WOULD JUST LOOK AT THE TEXT OF

1   THIS LAW:  WHAT CONDUCT WAS IT INTENDING TO

2   PROSCRIBE?  WHAT CONDUCT IS PROSCRIBED BY IT?  AND

3   THEN HAS THE STATE MET ITS BURDEN UNDER *CENTRAL*

4   *HUDSON*?  AND I THINK, FRANKLY, THAT ANSWER IS OF

5   COURSE NOT.  AND THAT'S BEFORE WE EVEN GET TO THE

6   FACT THAT THIS LAW IS VERY VAGUE AND SHOULD BE

7   STRICKEN FOR DUE PROCESS REASONS.

8            I FRANKLY CAN'T TELL YOU WHAT UTILIZING

9   A TERM THAT IS THE SAME OR DECEPTIVELY SIMILAR TO A

10  TERM THAT HAS BEEN USED OR DEFINED HISTORICALLY IN

11  REFERENCE TO A SPECIFIC AGRICULTURAL PRODUCT MEANS.

12       THE COURT:  BUT DON'T YOU THINK THAT --

13  SHOULDN'T THE THREAT OF FUTURE ENFORCEMENT -- AND I

14  THINK THE CASE LAW REFLECTS SHOULD BE -- AT LEAST THE

15  COURT CAN CONSIDER WHETHER IT'S SUBSTANTIAL.  IS

16  THERE A SUBSTANTIAL THREAT AND NOT A THEORETICAL

17  THREAT OF ENFORCEMENT HERE?

18       MS. HOWELL:  I THINK THAT GIVEN THE

19  LEGISLATIVE HISTORY, THE INTENT OF THE STATE FOR THIS

20  TO APPLY TO TOFURKY AND OTHER PRODUCERS, THE FACT

21  THAT THERE IS NO CARVE-OUT IN THE LANGUAGE OF THE

22  LAW, I THINK THAT IS A REAL IMMINENT AND

23  INSUBSTANTIAL THREAT.  I THINK BUT FOR YOUR HONOR'S

24  MANDATE TO, YOU KNOW, WORK THIS CASE OUT FIRST BEFORE

25  ANY ENFORCEMENT ACTION, I WONDER IF ANY ENFORCEMENT

1    ACTION WOULD HAVE BEEN TAKEN ALREADY.  I THINK THAT

2    THIS LAW IS, AGAIN, INCREDIBLY BROAD, INCREDIBLY

3    VAGUE, WHICH OPENS ITSELF UP TO DISCRIMINATORY AND

4    ARBITRARY ENFORCEMENTS.

5                AND I WOULD ALSO LIKE TO POINT OUT,

6    BEFORE WE MOVE ON, THAT -- TO YOUR POINT OF ISN'T IT

7    OKAY FOR STATES TO HAVE LOTS OF LAYERS OF THINGS TO

8    PREVENT MISBRANDING.  THIS LAW -- AND, YOU KNOW, I

9    THINK THAT YOUR HONOR IS PROBABLY VERY FAMILIAR WITH

10   THE EIGHTH CIRCUIT DETERMINATION IN MISSOURI IN A

11   SIMILAR CASE --

12          **THE COURT:**  RIGHT.

13          **MS. HOWELL:**  -- WHERE THE LANGUAGE SAID IT

14   PROHIBITS MISREPRESENTING A PRODUCT AS MEAT --

15   MISREPRESENTING A PRODUCT AS MEAT AND THAT IT DIDN'T

16   GO ON TO LIST ANY CONDUCT.  THIS SAYS *TO ANY ACTIVITY*

17   *INCLUDING THE FOLLOWING*, AND THEN IT SAYS

18   *REPRESENTING A PRODUCT AS MEAT*.

19                I THINK THAT THAT LANGUAGE IS ALMOST

20   COMPLETELY PARALLEL AND IDENTICAL TO THAT OF ARKANSAS

21   WHERE THIS -- THE COURT SAID THAT TOFURKY WAS LIKELY

22   TO WIN ON THE MERITS OF ITS FIRST AMENDMENT CHALLENGE

23   BECAUSE --

24          **THE COURT:**  BUT THE MISSOURI -- WAS IT THE

25   MISSOURI LAW OR THE ARKANSAS LAW?  IT WAS DIFFERENT.

1 IT WASN'T AS EXTENSIVE.  IT WASN'T MUCH -- JUST SORT

2 OF MUCH BROADER?  WELL, I SHOULDN'T SAY BROADER.  IT

3 WAS CERTAINLY MORE -- IT WAS VAGUE, I WOULD SAY;

4 WHEREAS THE LOUISIANA LAW IS VERY, VERY SPECIFIC.  IT

5 OUTLINES SOMETHING ON THE ORDER OF 11 OR 12 INSTANCES

6 OF LABELING THAT COULD RESULT IN A VIOLATION OF THE

7 STATUTE.  AM I CORRECT ABOUT THAT?

8 　　　　　MS. HOWELL:  I THINK YOU'RE CORRECT INSOFAR

9 AS MISSOURI'S LAW WAS SIMPLER AND THAT IT JUST SAID

10 MISREPRESENTING A PRODUCT AS MEAT IS PROHIBITED.

11 ARKANSAS AND LOUISIANA ACTUALLY HAVE MORE IN COMMON.

12 BOTH ARKANSAS AND LOUISIANA HAS SET FORTH A BUNCH OF

13 CONDUCT.  LIKE YOU SAID, THOSE 12 THINGS.

14 　　　　　BUT EACH OF THOSE THINGS IN AND OF

15 THEMSELVES ARE VAGUE:  REPRESENTING A FOOD PRODUCT AS

16 MEAT WHEN IT'S NOT DERIVED FROM BEEF, PORK, POULTRY,

17 ALLIGATOR.  AGAIN, DOES THAT MEAN USING A TERM LIKE

18 *SAUSAGE*?  DOES IT MEAN -- REGARDLESS IF IT HAS VEGAN

19 SAUSAGE OR -- DOES THAT MEAN SHOWING A PICTURE OF THE

20 VEGAN SAUSAGE IS MISREPRESENTING IT AS MEATS?  WE

21 DON'T KNOW.

22 　　　　　SO I WOULD SAY THAT DESPITE THE FACT

23 THAT IT GOES ON TO SAY ALL OF THESE THINGS WE ARE

24 DETERMINING CONSTITUTE MISREPRESENTATIONS OR

25 MISLABELING, IT DOESN'T GIVE COMPANIES ANY GUIDANCE

1 ABOUT HOW TO AVOID THAT.  IT DOESN'T GIVE ANY CARVE-

2 OUT.

3       **THE COURT:**  BUT LET ME ASK YOU THIS, MS.

4 HOWELL.  BECAUSE IN THE ARKANSAS CASE WAS A DIFFERENT

5 STANDARD.  YOUR CLIENT SOUGHT A PRELIMINARY

6 INJUNCTION.  IS THAT RIGHT?  HERE YOU'RE SEEKING --

7 YOU'RE SEEKING THE COURT TO FIND THAT THIS IS AN

8 UNCONSTITUTIONAL LAW.

9            SO I GUESS WHAT STANDARDS SHOULD THE

10 COURT AT THIS STAGE OF THIS LITIGATION CONSIDER --

11 ACTUALLY PERHAPS, MR. LITCHFIELD, MAYBE THAT QUESTION

12 IS MORE PROPERLY PUT TO YOU.

13            SO WHAT'S -- WHY SHOULDN'T -- SHOULD

14 THE COURT PROCEED DIRECTLY ESSENTIALLY TO THE MERITS

15 OF THIS AT THIS STAGE?

16       **MR. LITCHFIELD:**  I THINK SO, YOUR HONOR,

17 CANDIDLY.  I ACTUALLY DO.  I THINK WHERE WE ARE NOW

18 IS WE HAVE AGREED TO A TRO AND NOBODY HAS PUSHED THE

19 PRELIMINARY INJUNCTION.  WHAT THEY'RE SEEKING NOW IS

20 A PERMANENT INJUNCTION AND A DECLARATORY JUDGMENT,

21 WHAT THEY'RE SEEKING.  AND I -- FOR THE REASON WE'VE

22 SAID BEFORE, I DON'T THINK THEY'RE ENTITLED TO

23 EITHER.  SO YES, YOU'RE LOOKING AT THE MERITS OF IT,

24 YOUR HONOR.  THIS CASE IS FAR ALONG.

25            IF I CAN, YOUR HONOR, BEYOND ANSWERING

1   YOUR QUESTION, IF I CAN JUST MAKE A COUPLE OF

2   COMMENTS HERE.

3         **THE COURT:**  SURE.

4         **MR. LITCHFIELD:**  I SUGGEST TO THIS COURT

5   THAT WHAT TOFURKY IS DOING HERE IS BASICALLY ARGUING

6   THAT LOUISIANA HAS NO RIGHT TO BAN MISREPRESENTATIONS

7   WITH FOOD PRODUCTS.  THAT'S ESSENTIALLY -- ON ONE

8   HAND THEY SAY IT'S VAGUE.  ON THE OTHER HAND THEY SAY

9   IT'S TOO SPECIFIC.  YOU GET -- YOU'RE DAMNED IF YOU

10  DO AND YOU'RE DAMNED IF YOU DO NOT.

11        I THINK THE LEGISLATURE HAS DONE A

12  VERY, VERY CREDIBLE JOB IN SAYING WHAT ITS PURPOSE

13  IS:  *WE WANT TO BRAND -- TO BAN MISBRANDING AND*

14  *MISREPRESENTATION IN OUR FOOD PRODUCTS.  HERE ARE*

15  *SOME EXAMPLES OF HOW YOU CAN MISBRAND OR*

16  *MISREPRESENT*.  AND THEY OUTLINE THEM VERY CLEARLY,

17  VERY SPECIFICALLY.

18        I THINK THIS CASE IS VERY MUCH LIKE THE

19  EIGHTH CIRCUIT, YOUR HONOR, AND I -- BOTH IN TERMS OF

20  STANDING -- ALTHOUGH THE EIGHTH CIRCUIT, YOU KNOW,

21  FOR PURPOSES OF BEING ABLE TO DENY THE INJUNCTION

22  SAID THERE WAS STANDING FOR THAT PURPOSE AT AN EARLY

23  STAGE.

24        BUT IN THIS PARTICULAR CASE, UNDER

25  *CENTRAL HUDSON* I DON'T KNOW HOW LOUISIANA COULD HAVE

1  DONE IT ANY BETTER.  *CENTRAL HUDSON*, THE UNITED

2  STATES SUPREME COURT SAYS WE CAN BAN MISLEADING

3  COMMERCIAL SPEECH.  IT'S NEVER BEEN ANYTHING BUT THE

4  LAW IN THE UNITED STATES OF AMERICA THAT A GOVERNMENT

5  ENTITY, A STATE CAN BAN MISLEADING COMMERCIAL SPEECH.

6  THAT'S ALL THIS ACT DOES.  AND IT DOES IT

7  PROCEDURALLY IN A WAY THAT MAKES IT VERY, VERY CLEAR,

8  EXAMPLES OF HOW YOU CAN GO ABOUT DOING THAT.

9              IT EVEN REFERS TO THE FEDERAL ACT --

10 THE FEDERAL FOOD, DRUG, AND COSMETIC ACT.  IT GOES TO

11 GREAT LENGTHS TO MAKE SURE THAT TOFURKY DOESN'T

12 VIOLATE THE PURPOSE OF THIS LAW.  AND TOFURKY HAS NOT

13 VIOLATED THE PURPOSE OF THIS LAW.

14             I THINK TOFURKY WANTS TO GET IN THERE

15 IN ALL THE STATES.  AND I THINK IT'S PERPLEXED

16 BECAUSE UNDER LOUISIANA LAW THEIR NINE LABELS DO NOT

17 VIOLATE THE ACT.  SO NOW THEY'RE TRYING TO BACK

18 THEMSELVES INTO THIS CORNER WHERE -- *JUDGE, LET'S*

19 *ASSUME IT DID.  LET ME -- WHAT IF WE COME UP WITH*

20 *SOME LABELS, YOUR HONOR, BY WHICH WE HYPOTHETICALLY*

21 *WILL VIOLATE THIS LAW?  PLEASE JUST GIVE US AN*

22 *ADVISORY OPINION, YOUR HONOR.  GIVE US THIS WHEN WE*

23 *NEED THIS COURT TO SAY THAT WE HAVE STANDING AND THAT*

24 *WE HAVE -- AND THIS LAW IS VIOLATIVE OF THE UNITED*

25 *STATES CONSTITUTION, EVEN THOUGH IT DOESN'T EVEN*

1   *AFFECT US.*  AND THAT'S WHERE WE ARE, YOUR HONOR.

2          **THE COURT:**  OKAY.  THANK YOU, MR.

3   LITCHFIELD.

4          MS. HOWELL, LET ME GIVE YOU A BRIEF

5   OPPORTUNITY TO REPLY.  AND I HAVE ONE MORE QUESTION

6   FOR YOU.

7          **MS. HOWELL:**  OH, I'M SORRY.  I WAS WAITING

8   FOR THE QUESTION, YOUR HONOR.

9          **THE COURT:**  NO, NO.

10         **MS. HOWELL:**  I WILL REPLY.  YOU KNOW, AGAIN,

11  I THINK THAT THE CRUX OF THIS ISSUE IS THAT WE ARE

12  STUCK WITH THE LANGUAGE OF THE LAW.  EVERYTHING THAT

13  MR. LITCHFIELD IS SAYING THE LAW DOES IS KIND OF

14  BELIED BY THE PLAIN LANGUAGE OF THE LAW.  I THINK

15  THAT IT'S ALSO FURTHER BELIED BY WHAT THE LEGISLATURE

16  REPEATEDLY SAID.  WE HAVE NUMEROUS LEGISLATORS WHO

17  CO-SPONSORED THE BILL SAYING THAT WE'RE WORRIED ABOUT

18  OUR INDUSTRIES, WE'RE WORRIED ABOUT COMPETITION FROM

19  PLANT-BASED.

20         I THINK THAT, AGAIN, IF -- AND I THINK

21  IT'S VERY CLEAR THE ACT WAS DESIGNED TO AND CLEARLY

22  IS EXPANDING THE DEFINITION OF MISLEADING AND

23  MISBRANDING, WHICH, AGAIN, IS ALREADY PROHIBITED BY

24  THE LAW.  SO, YOU KNOW, FOR THEM TO ARGUE THAT THIS

25  LAW IS NOT IN ACTUALITY EXPANDING WHAT THE STATE HAS

1  DETERMINED IS MISBRANDING, THEN WHAT WAS IT DESIGNED

2  TO DO?

3          FURTHER I WOULD SAY THAT THE ANSWER TO

4  A CONCERN ABOUT MISLEADING SPEECH IN THIS CONTEXT

5  WOULD BE MORE DISCLOSURE, NOT LESS.  NOT A BAN ON

6  SPEECH BUT, RATHER, WHY ISN'T THERE A CARVE-OUT

7  SAYING IF THESE TYPES OF LABELS DON'T CONCERN THE

8  COMMISSIONER OR DON'T CONCERN THE STATE OF LOUISIANA,

9  WHY ISN'T IT JUST THAT IF THEY MAKE CLEAR TO

10 CONSUMERS WITH QUALIFYING LANGUAGE ON THEIR FRONT OF

11 PACKAGE, THAT, YOU KNOW, THAT IT'S VEGAN OR

12 VEGETARIAN OR VEGGIE OR WHAT HAVE YOU, THEN THAT'S

13 FINE.  BUT AGAIN, THAT'S NOT WHAT THE LAW SAYS.

14         THE COURT:  AND YOU BELIEVE THAT THAT CARVE-

15 OUT LANGUAGE THAT YOU REFER TO CAN ONLY BE ISSUED BY

16 THE LEGISLATURE AND NOT BY THE REGULATORY AUTHORITY?

17 I MEAN -- BUT ISN'T IT TRUE THAT CONGRESS ITSELF

18 ALWAYS -- NOT ALWAYS BUT VERY OFTEN WILL ENACT

19 LEGISLATION THAT REQUIRES SOME IMPLEMENTING GUIDANCE

20 THROUGH THE FORM OF REGULATIONS?  AND THE AGENCIES

21 RESPONSIBLE FOR ADMINISTERING THOSE ARE THE ONES THAT

22 REALLY KIND OF PUT THE MEAT ON THE BONES.  IS THAT

23 POSSIBLE HERE?

24         MS. HOWELL:  AND I LIKE YOUR PHRASE *MEAT ON*

25 *THE BONES* FOR THIS PARTICULAR CASE.

1    THE COURT:  NO PUN INTENDED.

2    MS. HOWELL:  SO MY UNDERSTANDING IS THAT IN

3  THOSE SITUATIONS, YOU KNOW, THERE IS KIND OF A BROAD

4  MANDATE AND THEN THE REGULATIONS KIND OF GET INTO THE

5  NITTY-GRITTY OF ENFORCEMENT.

6    HERE THE LAW ITSELF IS ALREADY SAYING

7  *WE'VE DETERMINED THESE THINGS.  WE ARE DECIDING THESE*

8  *THINGS ARE MISLEADING AND MISBRANDING.*  AND THE

9  REGULATIONS PROMULGATED DON'T DO ANYTHING DIFFERENT

10  TO (INAUDIBLE) AND SO THAT WOULD BE -- IT'S TOO

11  NARROW.  IT'S --

12    THE COURT:  BUT DIDN'T THE EIGHTH CIRCUIT

13  BASE ITS DECISION, IN PART, ON THE FACT THAT THE

14  STATE HAD ALREADY COMMITTED ITSELF TO NOT ENFORCING

15  THE LAW I GUESS IN AN UNCONSTITUTIONAL WAY?

16    MS. HOWELL:  THE EIGHTH CIRCUIT REALLY

17  RELIED HEAVILY ON THE FACT THAT THE LANGUAGE OF THE

18  LAW SAID *MISREPRESENTING A PRODUCT AS MEATS.*  SO IN

19  AND OF ITSELF *MISREPRESENTING* WOULD MEAN THAT THAT

20  DOES NOT HAVE THOSE CARVE-OUTS LIKE *VEGETARIAN* OR

21  *VEGGIE.*  SO, YOU KNOW, REALLY LEANING ON THAT ONE

22  WORD IS I THINK WHAT THE EIGHTH CIRCUIT --

23    THE COURT:  AND MY RECOLLECTION OF THE ACT

24  IS THAT THE STATE COMMISSIONER OR REGULATORY OR

25  ENFORCEMENT AUTHORITY ACTUALLY ISSUED A STATEMENT

1  THAT IT WOULD NOT ENFORCE THE ACT AGAINST YOUR

2  CLIENT.  AND AGAIN -- AND I'M NOT SUGGESTING THAT THE

3  EIGHTH CIRCUIT GOT IT RIGHT.  I JUST WANT TO BE SURE

4  I UNDERSTAND WHAT HAPPENED IN THE EIGHTH CIRCUIT,

5  BECAUSE, OF COURSE, IT PROVIDES SOME GUIDANCE TO THIS

6  COURT AND MAY PRESUMABLY PROVIDE GUIDANCE TO THE

7  FIFTH CIRCUIT AT SOME POINT.

8           BUT AM I CORRECT ABOUT THAT?  THAT THE

9  EIGHTH CIRCUIT DID, IN FACT, RELY ON THE AGENCY'S

10 STATEMENT RELATIVE TO ITS DECISION NOT TO ENFORCE THE

11 STATUTE AGAINST YOUR CLIENT?

12      MS. HOWELL:  I THINK THAT'S NOT ENTIRELY

13 ACCURATE, YOUR HONOR.  IN MISSOURI IT WAS THE

14 DEPARTMENT OF AGRICULTURE THAT RELEASED A MEMO KIND

15 OF LAYING OUT THOSE CARVE-OUTS.  BUT THE DEPARTMENT

16 OF AGRICULTURE OF MISSOURI IS NOT TASKED WITH

17 ENFORCEMENT OF THE MISSOURI STATUTE.  THE 115 COUNTY

18 PROSECUTORS ARE TASKED WITH ENFORCEMENT OF THAT

19 STATUTE.

20           I THINK THAT, AGAIN, THE LANGUAGE OF

21 THE EIGHTH CIRCUIT SAID THAT BASICALLY JUST BECAUSE

22 THE LANGUAGE OF THE LAW WAS NOT LIKELY TO BE APPLIED

23 TO TOFURKY BECAUSE IT ONLY PROHIBITED MISREPRESENTING

24 A PRODUCT AS MEATS, THAT BECAUSE TOFURKY WAS USING

25 QUALIFYING LANGUAGE, THAT IT COULD NEVER APPLY TO

1  TOFURKY.

2                    HERE WHAT THIS LAW IS SAYING IS:  *IF*

3  *YOU REPRESENT A PRODUCT AS MEAT, WE HAVE DECIDED THAT*

4  *THAT IS INHERENTLY MISLEADING.*

5            **THE COURT:**  BUT THAT'S NOT THE CASE HERE, IS

6  IT?  I MEAN, YOUR CLIENT ISN'T REPRESENTING THIS TO

7  BE MEAT.  IT'S PLANT-BASED.  IT'S CLEAR FROM THE

8  LABELS THAT IT SAYS PLANT-BASED WHATEVER SALAMI AND

9  THAT KIND OF THING.  RIGHT?

10           **MS. HOWELL:**  I THINK THAT IT IS -- IT COULD

11  ARGUABLY BE SAID TO BE REPRESENTING SOMETHING AS MEAT

12  BECAUSE IT SAYS, YOU KNOW, VEGAN SAUSAGE.  IT'S A

13  TYPE OF SAUSAGE, A TYPE OF, YOU KNOW -- BUT IT'S JUST

14  A VEGAN VERSION.

15                    AND ONCE MORE, SO EVEN THOUGH -- SO

16  WE'RE LOOKING -- SELLING A FOOD UNDER THE NAME OF AN

17  AGRICULTURAL PRODUCT WHEN IT'S NOT THAT.  SO VEGAN

18  SAUSAGE MIGHT BE SAID TO RUN AFOUL OF THAT.

19                    AND THEN THAT LAST KIND OF CATCH-ALL

20  USING A TERM THAT'S DECEPTIVELY SIMILAR TO A TERM

21  THAT'S BEEN USED IN THIS -- USED OR DEFINED

22  HISTORICALLY AND REFERENCED TO A SPECIFIC

23  AGRICULTURAL PRODUCT, I DON'T EVEN KNOW WHAT THAT

24  REALLY MEANS.  BUT I'M SURE THAT IT COULD BE -- OUR

25  CLIENT COULD BE CONSTRUED TO BE RUNNING AFOUL OF THAT

**1** BECAUSE IT USES MEAT TERMINOLOGY IN ITS MARKETING AND

**2** LABELING.

**3**         **THE COURT:**  ALL RIGHT.  WELL, THIS IS --

**4** THIS WAS HELPFUL.  NOW, AS I'M SURE YOU ALL KNOW,

**5** SINCE -- I THINK SINCE THE CASE WAS BRIEFED, THE

**6** FIFTH CIRCUIT ISSUED GUIDANCE IN THE CASE OF *BARILLA*

**7** *VS CITY OF HOUSTON* THAT ITSELF CHALLENGED OR PROVIDED

**8** GUIDANCE IN CASES INVOLVING ALLEGATIONS OF

**9** PRE-ENFORCEMENT -- PRE-ENFORCEMENT CHALLENGES TO

**10** CERTAIN STATUTES.  AND AGAIN, I THINK THAT -- ALSO A

**11** CASE INVOLVING COMMERCIAL SPEECH AS HERE.  I THINK

**12** THAT THE FIFTH CIRCUIT'S CASE -- IN THE *BARILLA* CASE,

**13** THAT IS -- MAY PROVIDE SOME GUIDANCE TO US HERE.  I

**14** DON'T THINK THAT YOU ALL HAVE HAD A CHANCE TO TAKE A

**15** LOOK AT IT.

**16**         SO WHAT I'M GOING TO DO -- I DON'T HAVE

**17** ANY OTHER QUESTIONS FOR EITHER SIDE AT THIS POINT.  I

**18** WILL TELL YOU THIS HAS BEEN VERY HELPFUL TO ME.  THIS

**19** IS AN IMPORTANT CASE FOR BOTH SIDES.  THERE IS NO

**20** QUESTION ABOUT THAT.  I WILL PERMIT POST-HEARING

**21** BRIEFING ON THE ISSUE.  AND AGAIN, I'M CONCERNED

**22** ABOUT, YOU KNOW, CONSTITUTIONAL ISSUES AND FRANKLY

**23** THE STANDING ISSUE.

**24**         BUT TAKE A LOOK AT THE *BARILLA* CASE.

**25** AND I WOULD INVITE YOU TO POINT OUT WHY YOU THINK THE

1   COURT SHOULD RELY ON THAT CASE OR PERHAPS SHOULD NOT

2   RELY ON THAT CASE, FIRST IN RECOGNIZING THAT THE

3   PLAINTIFF HAS STANDING TO PROCEED WITH THIS MATTER

4   AND EVEN WITH RESPECT TO THE MERITS OF THE MOTIONS.

5          THE POST-HEARING BRIEFS, TYPICALLY I

6   CONFINE THEM TO FIVE PAGES.  IN THIS CASE I WILL

7   CONFINE THEM TO EIGHT PAGES.  THAT INCLUDES BOTH THE

8   CAPTION PAGE AND THE SIGNATURE PAGE.  SO LET ME ASK

9   YOU ALL TO PROVIDE THOSE -- I'M GOING TO GIVE YOU A

10  LITTLE BIT OF TIME, COUNSEL.  AGAIN, WE WANT TO GET

11  GOING ON THIS THING.  LET'S SEE.

12          **MR. STERNBERG:**  YOUR HONOR, IF I MAY?

13          **THE COURT:**  YES.

14          **MR. STERNBERG:**  SCOTT STERNBERG HERE FOR THE

15  PLAINTIFFS.

16          THE PRETRIAL ORDER IS DUE IN ABOUT TWO

17  WEEKS.  AND IT SEEMS LIKE MR. LITCHFIELD AND THE

18  PETITIONER -- OR THE PLAINTIFF, SORRY -- WE ALL AGREE

19  ON THE FACTS HERE AND SO IT'S REALLY JUST A QUESTION

20  OF LAW.

21          IF WE'RE GOING TO DO POST-TRIAL

22  BRIEFING, IS THERE A WAY THAT WE COULD NOT KICK THE

23  CAN BUT PICK UP THE CAN AND PUT IT ON THE TABLE FOR A

24  LITTLE WHILE ON THAT PRETRIAL ORDER?

25          **THE COURT:**  YES.  THAT'S A REASONABLE

1   REQUEST.  SO I WILL PROVIDE FURTHER GUIDANCE OF THAT.

2              I KNOW THAT WE'RE APPROACHING THE

3   THANKSGIVING HOLIDAY, AND CERTAINLY I WANT ALL OF YOU

4   TO ENJOY THE HOLIDAY WITH YOUR FAMILIES.  SO I'M

5   GOING TO ASK THAT YOU FILE YOUR MOTIONS ON OR BEFORE

6   FRIDAY, DECEMBER 1OTH.  OKAY?

7              I WILL SUSPEND THE DEADLINE FOR THE

8   FILING OF THE PRETRIAL ORDER UNTIL FURTHER NOTICE.  I

9   WILL PROVIDE A REVISED BRIEFING SCHEDULE THAT WILL BE

10  FORTHCOMING AFTER THE SUBMISSION OF THE POST-HEARING

11  BRIEFS.

12             YOU HAD ANOTHER QUESTION, MR.

13  STERNBERG?

14       **MR. STERNBERG:**  I DID, YOUR HONOR.  IF IT

15  PLEASES YOUR HONOR, I WOULD MOVE TO OFFER, FILE AND

16  INTRODUCE ALL THE EXHIBITS ATTACHED TO THE

17  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO OUR

18  OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY

19  JUDGMENT AT THIS TIME.

20       **THE COURT:**  VERY WELL.  YOUR MOTION IS

21  GRANTED.

22             IS THERE ANYTHING FURTHER?  ANY

23  QUESTIONS THAT -- ANYTHING FURTHER -- NOT ARGUMENT,

24  OF COURSE -- FROM THE PLAINTIFFS?

25       **MR. STERNBERG:**  NO, YOUR HONOR.  I THINK MR.

1    LITCHFIELD MIGHT WANT TO DO HIS EXHIBITS, TOO.

2          **THE COURT:**  YES, MR. LITCHFIELD, YOUR

3    EXHIBITS WILL BE ADMITTED AS WELL.

4          **MR. LITCHFIELD:**  THANK YOU, YOUR HONOR.

5                AND THANK YOU, MR. STERNBERG.

6          **THE COURT:**  ANY QUESTIONS ON YOUR PART, MR.

7    LITCHFIELD?

8          **MR. LITCHFIELD:**  NO, SIR.  I JUST WANT TO

9    THANK THE COURT AND COUNSEL FOR CONSIDERATION AND

10   EVERYTHING ELSE ASSOCIATED WITH TODAY'S ARGUMENT.  I

11   THOUGHT IT WAS VERY PRODUCTIVE.

12         **THE COURT:**  WELL, THANK YOU, MR. LITCHFIELD.

13                AND LET ME STATE THE OBVIOUS.  MAYBE

14   IT'S NOT SO OBVIOUS.  BUT WE'RE TRYING TO GET SORT OF

15   BACK INTO THE SWING OF THINGS IN THIS COVID ERA.  I

16   WOULD ANTICIPATE THAT SHOULD THERE BE A NEED FOR ANY

17   FUTURE ARGUMENTS -- AND I DON'T THINK THERE ARE -- OR

18   ANY OTHER MOTIONS, THOSE WILL BE CONDUCTED IN PERSON

19   IN THE COURTROOM.

20                ALSO, LET ME JUST COMMEND BOTH SIDES

21   FOR THE WAY THAT YOU'VE AMICABLY GONE ABOUT

22   LITIGATING THIS CASE AND REPRESENTING YOUR RESPECTIVE

23   CLIENT'S INTEREST.  IT SHOWS REAL PROFESSIONALISM.

24   AND AGAIN, I COMMEND YOU ALL FOR THAT.

25                ALL RIGHT.  AGAIN, WE'LL WAIT FOR THE

1   BRIEFINGS ON THE 10TH OF DECEMBER.  A RULING WILL

2   ISSUE THEREAFTER.  AND WE'LL SEE WHERE WE GO FROM

3   THERE.  OKAY?

4            **MR. STERNBERG:**  THANK YOU, YOUR HONOR.

5            **MR. LITCHFIELD:**  THANK YOU VERY MUCH, YOUR

6   HONOR.

7            **THE COURT:**  THERE BEING NO FURTHER BUSINESS

8   FOR THE COURT, COURT IS NOW ADJOURNED.

9            **(WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)**

10            **C E R T I F I C A T E**

11            **I CERTIFY THAT THE FOREGOING IS A CORRECT**

12   **TRANSCRIPT FROM THE RECORD OF THE PROCEEDINGS IN THE**

13   **ABOVE-ENTITLED NUMBERED MATTER.**

14   **S:/NATALIE W. BREAUX**

15   **NATALIE W. BREAUX, RPR, CRR**

16   **OFFICIAL COURT REPORTER**

17

18

19

20

21

22

23

24

25